**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MORGAN STANLEY SMITH BARNEY LLC,** : | |
| : | |
| **Plaintiff,** : | |
| : | **Civil Action No.** |
| : | |
| v. : | |
| : | |
| **RONALD OUWENGA, BRIAN THOMAS,** : | |
| **MYRON HENDRIX, MICHAEL BRUNER,** : | |
| **JEFF SCHIMMELPFENNIG, and ZACHARY** : | |
| **BIRKEY,** : | |
| : | |
| **Defendants.** : | |
| : | |

## COMPLAINT

Plaintiff Morgan Stanley Smith Barney LLC ("Morgan Stanley"), by its undersigned attorneys, hereby brings the following Complaint for temporary and preliminary injunctive relief against Defendants Ronald Ouwenga, Brian Thomas, Myron Hendrix, Michael Bruner, Jeff Schimmelpfenig and Zachary Birkey (unless otherwise noted, collectively referred to herein as "Defendants") and alleges as follows:

### I. INTRODUCTION

1. This dispute arises from Defendants' mass and sudden resignations from Morgan Stanley's Bourbonnais, Illinois office on Thursday, September 13, 2018 and their subsequent affiliations with a Morgan Stanley competitor, Stifel Nicolaus & Co. ("Stifel Nicolaus"), located in a nearby office just a couple of blocks away.

2. Since resigning from Morgan Stanley, Defendants have been soliciting Morgan Stanley clients in violation of Morgan Stanley's *Joint Production Arrangement Policy* (the "Agreement"), which all Defendants freely signed in conjunction with their Joint Production

1

Memorandum Agreement. (Copies of Defendants' Agreements, which they all signed electronically, are attached hereto collectively as Exhibit "A"; a copy of the Joint Production Memorandum Agreement, with client names and account numbers redacted, is attached hereto as Exhibit "B").

3. In addition, Defendants Ouwenga and Hendrix signed additional non-solicitation provisions contained in their *Financial Advisor Employment Agreement* ("FA Agreement"). (Copies of their FA Agreements are attached hereto collectively as Exhibit "C").

4. Defendants were a team of six financial advisors at Morgan Stanley. In addition, Defendant Birkey was the manager of Morgan Stanley's Bourbonnais office. As a team, Defendants serviced approximately $660 million in assets under Morgan Stanley management, representing approximately $4.2 million in annual gross revenue to Morgan Stanley.

5. Notwithstanding their express obligations, Morgan Stanley believes that Defendants have been soliciting clients since their resignations. For example, on the day after the Defendants' resignations, a Morgan Stanley client visited the Bourbonnais office of Morgan Stanley to inform Morgan Stanley that Defendant Bruner called the client to say that the group moved and asked the client to move to Stifel. The client, surprised by the call, was unsure whether it was actually Bruner or someone posing as Bruner. Morgan Stanley confirmed to the client that Bruner and the other Defendants had indeed left the firm.

6. Based on Morgan Stanley's conversations with its other clients in just this short span since Defendants resigned, it is also clear that Defendants have initiated numerous other telephone calls to, and/or have been personally meeting with, Morgan Stanley clients. In fact, on Tuesday, September 18, 2018, another client informed Morgan Stanley that the client was "asked" to transfer the client's business to Stifel. In addition, it appears that Defendants and/or individuals

2

acting in concert with them are also using social media to reach out to Morgan Stanley clients as well. (*See* Exhibit "D"). On a recent Facebook post regarding the group's change of employment, it appears that Morgan Stanley clients are among those "liking", and "commenting" on, the post.

7. Since Defendants' *en masse* resignations, clients have also been asking Morgan Stanley if the Bourbonnais office is closing or if Morgan Stanley is going bankrupt. Morgan Stanley is concerned that Defendants, in addition to soliciting clients, are making false and disparaging remarks to them as well.

8. Morgan Stanley also believes that Defendants retained information pertaining to Morgan Stanley clients, including client files and contact information and potentially other sensitive client information. Specifically, files that were known to exist pertaining to a large institutional client cannot be located at Morgan Stanley's offices since Defendants' departures. These files took up several file drawers, but now make up approximately only half a drawer. Further, there appears to be very little or no information contained within the files of the larger clients serviced by Defendants.

9. On Friday, September 14, 2018, the day after Defendants resigned, Morgan Stanley sent letters by overnight delivery to Defendants reminding them of their obligation not to solicit Morgan Stanley clients, as well as their obligation not to retain or use any information pertaining to Morgan Stanley clients. On September 17, 2018, each Defendant responded to the letters generically by stating in an email to Morgan Stanley counsel: "I intend to comply with any continuing legal obligations I may have to Morgan Stanley. When I resigned, I did not take with me any Morgan Stanley documents or information." In their responses, however, Defendants did not specifically acknowledge their obligation not to solicit Morgan Stanley

3

clients, even though each Defendant was provided copies of their non-solicitation agreements in Morgan Stanley's letters to them.

10. Moreover, despite Defendants' representations that they did not "take" any "Morgan Stanley documents or information," as noted above, files pertaining to a large institutional client appear to be missing. Morgan Stanley sent each Defendant a follow-up demand for the return of client files and any other information they retained upon their departures pertaining to Morgan Stanley clients, including client contact information. No such files or information were ever returned.

11. To prevent irreparable harm arising from this course of wrongdoing, Morgan Stanley seeks temporary injunctive relief, inter alia, requiring Defendants to comply with their Agreements with Morgan Stanley, including their non-solicitation and confidentiality agreements, and barring them from using, disclosing or retaining Morgan Stanley confidential and proprietary client information.

12. Even though the merits of this dispute are subject to mandatory arbitration before the Financial Industry Regulatory Authority ("FINRA"), under Rule 13804 of the FINRA Code of Arbitration Procedure, Morgan Stanley has the express right to seek temporary injunctive relief in this Court. In accordance with Rule 13804(a)(2) of the FINRA Code, simultaneous with the filing of its motion for temporary injunctive relief in this Court, Morgan Stanley will file its claim for permanent injunctive relief with FINRA.

13. Indeed, Defendants *expressly agreed the issuance of injunctive relief* in their Agreements in order to enforce their non-solicitation and confidentiality provisions. (Exhibit "A" hereto at paragraph IV).

## II. PARTIES

14. Morgan Stanley is a limited liability company incorporated in Delaware with its principal place of business in the State of New York. Morgan Stanley's sole member is Morgan Stanley Smith Barney Holdings LLC, also incorporated in Delaware with its principal place of business in the State of New York. Morgan Stanley Smith Barney Holdings LLC, in turn, has as members various entities incorporated in Delaware, New York and/or other foreign jurisdictions. No member of Morgan Stanley Smith Barney Holdings LLC is a citizen of the state of Illinois; namely, no such member is either incorporated in Illinois or has its principal place of business in Illinois.

15. Upon information and belief, all Defendants reside in, and are citizens of, the State of Illinois.

## III. JURISDICTION AND VENUE

16. Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, against Defendants. Venue is proper in this district because it is the district in which the conduct complained of occurred.

## IV. FACTS COMMON TO ALL COUNTS

17. Paragraph IV of Defendants' Agreements, states: "[F]or a period of one (1) year following any Joint Producer's termination of employment for any reason, each departing Joint Producer agrees not to solicit any Client Accounts or retain any information regarding any such Client Accounts, including, but not limited to, a list of Morgan Stanley client names and/or client contact information."

18. Defendants acknowledged that Morgan Stanley would be entitled to injunctive

relief to the extent they breached their obligations under the Agreement. Paragraph IV of Defendants' Agreements expressly provides, in pertinent part: "In the event of a breach of any of the restrictions contained or incorporated herein by reference, each Joint Producer agrees that the Firm will suffer immediate and irreparable harm, that money damages will not be adequate to compensate[e] the Firm, and the Firm will therefore be entitled to appropriate injunctive relief."

19. In addition, Defendants Ouwenga and Hendrix each signed an FA Agreement, containing similar non-solicitation and confidentiality obligations, as well as a consent to injunctive relief provision. (*See* Exhibit "C"; paras. 2-4).

20. Defendants' commitment to maintain the confidentiality of all of Morgan Stanley's client information is also set forth other agreements. For instance, Defendants agreed to abide by Morgan Stanley's Code of Conduct. (Exhibit "E"). The Code of Conduct defines "confidential information" as information "that is not generally known to the public", including the "identity of our clients. . . ." (Exhibit "E" at 36).

21. The Code of Conduct further states, "You must protect all confidential information, regardless of its form or format" and "only access confidential information that you need and are authorized to see.. . . " (*Id*. at 37).

22. On September 13, 2018, Defendants resigned their employment from Morgan Stanley to begin working at Stifel Nicolaus. As set forth above, Morgan Stanley believes that Defendants are soliciting clients in violation of Morgan Stanley's *Joint Production Arrangement Policy* and other express obligations. Morgan Stanley also believes that Defendants are using information pertaining to Morgan Stanley clients to assist them in the solicitation of clients, in further violation of their obligations.

23. Unless Defendants are enjoined from violating the terms of their Agreements (as

well as the FA Agreements signed by Defendants Ouwenga and Hendrix) and other obligations to Morgan Stanley, Morgan Stanley will be irreparably harmed.

24. Morgan Stanley has no adequate remedy at law.

## COUNT I
## (BREACH OF CONTRACT)

25. The allegations of Paragraphs 1 through 24 are incorporated herein by reference with the same force and effect as if set forth in full below.

26. Defendants have breached the provisions of their Agreements (and FA Agreements signed by Defendants Ouwenga and Hendrix) and Code of Conduct.

27. As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

## COUNT II
## (BREACH OF THE DUTY OF LOYALTY)

28. The allegations of Paragraphs 1 through 27 are incorporated herein by reference with the same force and effect as if set forth in full below.

29. Upon information and belief, Defendants have violated their duty of loyalty to Morgan Stanley by violating their contractual obligations to Morgan Stanley and by engaging in other actions contrary to the interests of Morgan Stanley.

30. As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

## COUNT III
## (UNFAIR COMPETITION)

31. The allegations of Paragraphs 1 through 30 are incorporated herein by reference with the same force and effect as if set forth in full below.

32. Upon information and belief, Defendants have engaged in acts of unfair competition.

33. As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in the above-referenced Counts, Morgan Stanley respectfully requests:

A Temporary Restraining Order and a Preliminary Injunction Order issue immediately, enjoining Defendants, directly or indirectly, and whether alone or in concert with others, from:

(i) Soliciting Morgan Stanley Client Accounts subject to the Agreements signed by all Defendants and the FA Agreements signed by Defendants Ouwenga and Hendrix;

(ii) Using, disclosing, or transmitting for any purpose, any records, documents, or information relating in any way to the clients, business or marketing strategies, or business operations of Morgan Stanley, whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

(iii) Retaining, in any form, including without limitation original, copied, handwritten, computerized, or any other form, any Records and Information;

(iv) All other such acts as this Court deems appropriate for injunctive relief.

WHEREFORE, by virtue of the foregoing acts complained of above, Morgan Stanley demands judgment in its favor and against Defendants for a temporary restraining order and preliminary injunctive relief pending the outcome of arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration of Arbitration Procedure.

By:   /s/ Jerry M. Santangelo
Jerry M. Santangelo, Esq.
SPERLING & SLATER, PC
55 West Monroe, Suite 3200
Chicago, Illinois 60603
312-641-3200
312-641-6192 (fax)

Attorneys for Plaintiff

*Of Counsel*:

Christopher C. Coss
Thomas J. Momjian, Esq.
COSS & MOMJIAN, LLP
111 Presidential Boulevard, Suite 214
Bala Cynwyd, PA 19004
610-667-6800
610-667-6620 (fax)

Dated: September 19, 2018