IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, | : | |
| Plaintiff, | : : : | Civil Action No. |
| v. | : : | |
| RONALD OUWENGA, BRIAN THOMAS, MYRON HENDRIX, MICHAEL BRUNER, JEFF SCHIMMELPFENNIG, and ZACHARY BIRKEY, | : : : : : | |
| Defendants. | : : | |

## AFFIDAVIT OF OCTOBERR WALTER

I, Octoberr Walter, being duly sworn, depose and state that if called as a witness in these proceedings I would testify as follows:

1. I have knowledge of all facts contained in this Affidavit and can testify truthfully to those facts if called upon as a witness under oath.

2. I have been the Branch Manager for Plaintiff Morgan Stanley Smith Barney LLC's ("Morgan Stanley") Orland Park, Illinois office since November 2017. Prior to that, I was the Associate Complex Manager for the Chicago North Complex of Morgan Stanley since June 2015. I have been employed by Morgan Stanley for almost 14 years. Since one of the Defendants in the above matter, Defendant Birkey, was the branch manager of Morgan Stanley's Bourbonnais, Illinois office until his resignation on September 13, 2018, I have been acting in a supervisory and managerial capacity for Morgan Stanley's Bourbonnais office. This Affidavit is made in support of Morgan Stanley's Motion for a Temporary Restraining Order and Preliminary Injunction against Defendants.

3. Defendants resigned their employment *en masse* on Thursday, September 13, 2018, without any advance notice, to work at a competitor, Stifel Nicolaus & Co. ("Stifel Nicolaus"), located in a nearby office just a couple of blocks away. Since resigning from Morgan Stanley, Defendants have been soliciting clients in violation of their *Joint Production Arrangement Policy* ("Agreement"), which they all signed in connection with their Joint Production Memorandum Agreement. (Copies of Defendants' Agreements, which they all signed electronically, are attached hereto collectively to the Complaint as Exhibit "A"; a copy of the Joint Production Memorandum Agreement, with client names and account numbers redacted, is attached to the Complaint as Exhibit "B").

4. Defendants were a team of six financial advisors at Morgan Stanley. In addition, Defendant Birkey, as noted above, was the manager of Morgan Stanley's Bourbonnais office. As a team, Defendants serviced approximately $660 million in assets under Morgan Stanley management, representing approximately $4.2 million in annual gross revenue to Morgan Stanley.

5. Notwithstanding their express obligations, Morgan Stanley believes that Defendants have been soliciting clients since their resignations. Based on Morgan Stanley's conversations with its clients in just this short span since Defendants resigned, it is clear that Defendants have initiated numerous telephone calls to, and/or have been personally meeting with, Morgan Stanley clients. In fact, on Tuesday, September 18, 2018, a client informed Morgan Stanley that the client was "asked" to transfer the client's business to Stifel. In addition, it appears that Defendants and/or individuals acting in concert with them are also using social media to reach out to Morgan Stanley clients as well. (*See* Exhibit "D" attached to the Complaint). On a recent Facebook post regarding the group's change of employment, it appears that Morgan Stanley clients

are among those "liking", and "commenting" on, the post.

6. We also believe that Defendants retained information pertaining to Morgan Stanley clients, including client files and contact information and potentially other sensitive client information. Specifically, files that were known to exist pertaining to a large institutional client cannot be located at Morgan Stanley's offices since Defendants' departures. These files took up several file drawers, but now make up approximately only half a drawer.

7. Paragraph IV of Defendants' Agreements, states: "[F]or a period of one (1) year following any Joint Producer's termination of employment for any reason, each departing Joint Producer agrees not to solicit any Client Accounts or retain any information regarding any such Client Accounts, including, but not limited to, a list of Morgan Stanley client names and/or client contact information." (*See* Exhibit "A" attached to the Complaint).

8. Defendants acknowledged that Morgan Stanley would be entitled to injunctive relief to the extent they breached their obligations under the Agreement. Paragraph IV of Defendants' Agreements expressly provides, in pertinent part: "In the event of a breach of any of the restrictions contained or incorporated herein by reference, each Joint Producer agrees that the Firm will suffer immediate and irreparable harm, that money damages will not be adequate to compensate[e] the Firm, and the Firm will therefore be entitled to appropriate injunctive relief." *Id.*

9. In addition, Defendants Ouwenga and Hendrix each signed a *Financial Advisor Employment Agreement* ("FA Agreement") containing similar non-solicitation and confidentiality obligations, as well as a consent to injunctive relief provision. (*See* Exhibit "C" to the Complaint; paras. 2-4).

10. Defendants' commitment to maintain the confidentiality of all of Morgan

3

Stanley's client information is also set forth in other agreements. For instance, Defendants agreed to abide by Morgan Stanley's Code of Conduct. (Exhibit "E" to the Complaint). The Code of Conduct defines "confidential information" as information "that is not generally known to the public", including the "identity of our clients. . . ." (Exhibit "E" to the Complaint at 36).

11. The Code of Conduct further states, "You must protect all confidential information, regardless of its form or format" and "only access confidential information that you need and are authorized to see.. . . " (*Id.* at 37).

12. Client information including identities, account numbers, investment holdings and other financial information is confidential and the exclusive property of the firm. In addition, clients consider their financial information to be highly secret and expect Morgan Stanley to take reasonable precautions to ensure their confidentiality. Morgan Stanley has implemented strict measures to ensure that highly secret and confidential customer information is secured and not available to the public. These steps obviously include the Agreements signed by Defendants (and the FA Agreements signed by Ouwenga and Hendrix) which provide that client information is confidential and cannot be used for any purpose other than conducting the business of Morgan Stanley.

13. The Code of Conduct further confirms the confidential nature of Morgan Stanley's client information. Morgan Stanley also has an annual compliance review. As part of this annual compliance review, employees such as Defendants are required to confirm their understanding that client information is confidential. Furthermore, Morgan Stanley also assigns secret computer passwords to limit access to client information on a "need to know basis". Defendants undoubtedly were fully aware of the steps taken by Morgan Stanley to protect its client information.

14. Defendants' actions have caused very significant and unquantifiable damage to Morgan Stanley. Morgan Stanley spends millions of dollars every year on developing and maintaining its customer base, including advertising, training, equipment, salaries, registration and licensing fees, and many other expenses, all of which are very considerable. In return, we expect our employees to honor their commitments. Significantly, there is nothing in their Agreements which prevent Defendants from working for a competing firm, even one located right across the street. Defendants' Agreements (and the FA Agreements signed by Ouwenga and Hendrix) simply prevent them from soliciting Morgan Stanley clients.

15. Finally, it is critical that the Court grant relief immediately. If our clients are diverted away, we will lose these relationships for years into the future. The damages that flow from that are huge but extremely difficult to quantify. So too is the negative impact and loss of goodwill resulting from the fact that confidential client information, entrusted to Morgan Stanley, has been confiscated without the knowledge or consent of clients.

16. I also am very concerned about the message it will send to other employees if Defendants can ignore their contracts and trade secret obligations, and without any consequences.

17. No prior relief has been requested.

*[signature]*
Octoberr Walter

Sworn to before me this 19th day of September, 2018.

*[signature]*
Notary Public

OFFICIAL SEAL
Linda L. LaPorte
Notary Public - State of Illinois
My Commission Expires 6/15/2020

5