IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | |
| RONALD OUWENGA, BRIAN THOMAS, | : | |
| MYRON HENDRIX, MICHAEL BRUNER, | : | |
| JEFF SCHIMMELPFENNIG, and ZACHARY | : | |
| BIRKEY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1. Plaintiff Morgan Stanley Smith Barney LLC ("Morgan Stanley") respectfully moves this Court for a Temporary Restraining Order and Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

2. Contemporaneously herewith, Morgan Stanley filed a Complaint with the Court, which is incorporated herein and made a part hereof by reference. Attached hereto as Exhibit "A" is Morgan Stanley's proposed Order, and attached hereto as Exhibit "B" is Morgan Stanley's supporting memorandum of law.

3. As stated in the Complaint, the Defendants, upon information and belief, have misappropriated, and continue to misuse, Morgan Stanley's trade secret information and have violated the express provisions of their non-solicitation and confidentiality agreements with Morgan Stanley.

4. For the reasons stated in the Complaint, unless the Defendants are enjoined from converting Morgan Stanley's property to their own use, and violating Morgan

Stanley's non-solicitation and confidentiality agreements and other legal rights, Morgan Stanley will be irreparably harmed by:

 (a) Disclosure of trade secrets, customer lists, and other confidential information that is solely the property of Morgan Stanley and its clients;

 (b) Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

 (c) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

5. Morgan Stanley has no adequate remedy at law.

WHEREFORE, Morgan Stanley respectfully prays that this Court **ORDER** and **DECREE** that:

(1) Defendants be immediately enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Stifel Nicolaus & Co. ("Stifel"), until further Order of this Court, from doing any of the following:

 (i) Soliciting the business of any Morgan Stanley Client Accounts, excluding members of the Defendants' family;

 (ii) Using, disclosing, or transmitting for any purpose, any records, documents, or information relating in any way to the Morgan Stanley Client Accounts, Morgan Stanley's business or marketing strategies, or the business operations of Morgan Stanley,

whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

(iii) Retaining, in any form, including without limitation original, copied, computerized, handwritten or any other form, any Records and Information;

(iv) Any other such acts as this Court deems appropriate for injunctive relief.

(2) The Defendants, and anyone acting in concert or participation with them, including any agent, employee, officer or representative of Stifel, be further ordered to return to Morgan Stanley all Records and Information, whether in original, copied, computerized, handwritten or any other form, and to purge any such Records and Information from their possession, custody, or control after providing all such information to Plaintiff's counsel, within twenty-four (24) hours of notice to the Defendants or their counsel of the terms of the Court's Order.

(3) The Court's Order remain in full force and effect until such time as the Court specifically orders otherwise.

(4) Morgan Stanley be granted leave to commence discovery, including depositions, immediately in aid of preliminary injunction proceedings before the Court.

(5) Pending a preliminary injunction hearing before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties be directed to proceed to expedited arbitration hearings on the merits before a duly appointed panel of arbitrators in accordance with Rule 13804 of the Financial Industry Regulatory Authority Code of Arbitration Procedure.

(6) The Defendants be ordered to show cause before the Court on the ___ day of _____, 2018 at _____ o'clock __.m. or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

Respectfully submitted,

 /s/ Jerry M. Santangelo
Jerry M. Santangelo, Esq.
SPERLING & SLATER, PC
55 West Monroe, Suite 3200
Chicago, Illinois 60603
312-641-3200
312-641-6192 (fax)

Attorneys for Plaintiff

*Of Counsel*:

Christopher C. Coss
Thomas J. Momjian, Esq.
COSS & MOMJIAN, LLP
111 Presidential Boulevard, Suite 214
Bala Cynwyd, PA 19004
610-667-6800
610-667-6620 (fax)


Dated: September 19, 2018

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, | : |
| Plaintiff, | : |
| | : Civil Action No. |
| v. | : |
| RONALD OUWENGA, BRIAN THOMAS, MYRON HENDRIX, MICHAEL BRUNER, JEFF SCHIMMELPFENNIG, and ZACHARY BIRKEY, | : |
| Defendants. | : |

## [PROPOSED] ORDER

**AND NOW**, this ___ day of September, 2018 upon consideration of the Complaint and supporting papers of Morgan Stanley Smith Barney LLC ("Morgan Stanley"), and having determined that:

1. The rights of Morgan Stanley with respect to its property, proprietary and confidential information, competitive interests, and contract with the Defendants are being and will continue to be violated unless the Defendants are restrained therefrom;

2. Morgan Stanley will suffer irreparable harm and loss if the Defendants are permitted to convert the property of Morgan Stanley to their own personal use and benefit, and that of their new employer, Stifel Nicolaus & Co. ("Stifel"), and solicit Morgan Stanley clients;

3. Morgan Stanley has no adequate remedy at law;

4. Greater injury will be inflicted upon Morgan Stanley by the denial of injunctive relief than would be inflicted upon the Defendants by the granting of such relief; and

**EXHIBIT A**

5. The issuance of injunctive relief will not disserve the public interest.

**IT IS HEREBY ORDERED AND DECREED THAT:**

1. A Temporary Restraining Order issue immediately and that security in the amount of $_____ be posted no later than the ___ day of _____, 2018;

2. The Defendants are immediately enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Stifel, until further Order of this Court, from doing any of the following:

   (i) Soliciting the business of any Morgan Stanley Client Accounts, excluding members of the Defendants' family;

   (ii) Using, disclosing, or transmitting for any purpose, any records, documents, or information relating in any way to the Morgan Stanley Client Accounts, Morgan Stanley's business or marketing strategies, or the business operations of Morgan Stanley, whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

   (iii) Retaining, in any form, including without limitation original, copied, computerized, handwritten or any other form, any Records and Information;

   (iv) Any and all other such acts as this Court deems appropriate for injunctive relief.

3. The Defendants, and anyone acting in concert or participation with them, including any agent, employee, officer or representative of Stifel, be further ordered to return to

Morgan Stanley all Records and Information, whether in original, copied, computerized, handwritten or any other form, and to purge any such Records and Information from their possession, custody, or control after providing all such information to Plaintiff's counsel, within twenty-four (24) hours of notice to the Defendants or their counsel of the terms of the Court's Order;

4. This Order shall remain in full force and effect until such time as the Court specifically orders otherwise;

5. Morgan Stanley is granted leave to commence discovery, including depositions, immediately in aid of preliminary injunction proceedings before the Court;

6. Pending a preliminary injunction hearing before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are directed to proceed to expedited arbitration hearings on the merits before a duly appointed panel of arbitrators in accordance with Rule 13804 of the Financial Industry Regulatory Authority Code of Arbitration Procedure; and

7.	The Defendants are ordered to show cause before the Court on the ___ day of _____, 2018 at _____ o'clock __.m. or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

**SO ORDERED.**

**September __, 2018 at ___ o'clock __.m.**

                                    BY THE COURT:

                                    _____
                                    U.S.D.J.

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| | : | |
| v. | : | |
| | : | |
| RONALD OUWENGA, BRIAN THOMAS, | : | |
| MYRON HENDRIX, MICHAEL BRUNER, | : | |
| JEFF SCHIMMELPFENNIG, and ZACHARY | : | |
| BIRKEY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MORGAN STANLEY'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
## PRELIMINARY INJUNCTION

I.      **INTRODUCTION**

Plaintiff Morgan Stanley Smith Barney LLC ("Morgan Stanley") submits this Memorandum of Law in support of its Motion for a Temporary Restraining Order and Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Defendants from violating their contractual and other obligations to Morgan Stanley.

As emphasized in Morgan Stanley's Complaint, and the accompanying Affidavits, since resigning from Morgan Stanley, Defendants have solicited clients in violation of their of their *Joint Production Arrangement Policy* (the "Agreement"). Defendants Ouwenga and Hendrix also signed additional non-solicitation provisions contained in their *Financial Advisor Employment Agreement* ("FA Agreement").

Morgan Stanley also has reason to believe that, in further violation of their contractual and other legal obligations, Defendants have retained and/or used Morgan Stanley's

**EXHIBIT B**

confidential client information. In fact, files pertaining to a large institutional client appear to be missing from Morgan Stanley's office. These files took up several file drawers, but now make up approximately only half a drawer. In addition, it would be virtually impossible to immediately make telephone calls to, and/or other direct contact with, Morgan Stanley clients, without the use of, at a minimum, the names, addresses, telephone numbers and/or email addresses of Morgan Stanley clients.

It is important to emphasize at the outset that Defendants all expressly agreed to temporary injunctive relief to preserve the *status quo* pending an arbitration hearing before the Financial Industry Regulatory Authority ("FINRA"). (Exhibit "A" to the Complaint at paragraph IV). Under FINRA rules, if this Court grants a TRO, a hearing on permanent injunctive relief will be held within only 15 days. In the absence of a Court-ordered injunction, however, no hearing will occur for many months (and perhaps even over a year), rendering the arbitration "meaningless" and a "hollow formality." Briefly stated, and as set forth more fully below, Morgan Stanley unquestionably is entitled to immediate injunctive relief.

II.     **LEGAL DISCUSSION**

It is well-settled that parties seeking interim injunctive relief must demonstrate that "(1) they have a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm which the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Goodman v. Illinois Department of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). Morgan Stanley easily meets these requirements. In fact, courts in Illinois and throughout the country have emphasized that immediate injunctive relief is critical in these cases in order to "preserve the meaningfulness" of the arbitration process and to ensure that the arbitration is not rendered a "mere hollow

**EXHIBIT B**

formality." *See*, *e.g., Merrill Lynch v. Bradley*, 756 F.2d 1048, 1054 (4th Cir. 1985) (immediate injunctive relief necessary to prevent arbitration from being a "hollow formality" and to preserve "meaningfulness" of the arbitration; clients cannot be "unsolicited").

A. **Morgan Stanley is Likely to Succeed on the Merits**

Morgan Stanley is entitled to a temporary restraining order and preliminary injunctive relief to enforce Defendants' contractual obligations and to prevent against further misappropriation and misuse of Morgan Stanley's confidential information. In Illinois, a restrictive covenant is enforceable if it is reasonable and necessary to protect a legitimate business interest of the employer. *Lawrence and Allen, Inc v. Cambridge Human Resource Group*, 685 N.E.2d 434, 441 (Ill. App. 1997). A legitimate business interest exists if either: 1) there are "near permanent business relationships" with customers; or 2) the defendant had access to trade secrets or other confidential information of the employer by virtue of his or her employment. *Id.* at 443. Not only did Defendants have access to trade secrets by virtue of their employment (see discussion *infra*), the financial advisor relationship is precisely the type of professional services relationship that has led courts to conclude that it involves "near-permanent" relationships. *See, e.g., Cuna Mutual Life Ins. Co. v. Kuperman*, 1998 U.S. Dist. LEXIS 10320, at *20 (N.D. Ill. 1998) (enforcing non-solicitation provision against broker; making a finding of "near-permanent relationships" and noting specifically that "customer loyalty is characteristic in a service business, such as the financial service business" and "long-term relationships are important in the financial service business . . ."); *see also Lawrence and Allen*, 685 N.E.2d at 444 ("[A] near-permanent relationship with clients is inherent in the provision of professional services.").

Applying Illinois law, federal and state courts routinely have granted injunctive relief to enforce the same type of non-solicitation and non-disclosure provisions at issue here.

3

*See*, *e.g.*, *Merrill Lynch v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993) ("We are unable to conclude that the district court abused its discretion in granting a TRO enjoining the defendants from soliciting any business from Merrill Lynch clients and from disclosing Merrill Lynch records."); *Merrill Lynch v. Cross*, 1998 U.S. Dist. LEXIS 3188 (N.D. Ill. 1998) (issuing injunctive relief to enforce non-solicitation and non-disclosure provisions). *See also A-Tech Computer Services, Inc. v. Soo Hoo,* 254 Ill. App. 3d 392, 627 N.E.2d 21 (1st Dist. 1993); *Tyler Enterprises of Elwood, Inc. v. Shafer,* 214 Ill. App. 3d 145, 573 N.E.2d 863 (3rd Dist. 1991); *Wolf and Company v. Waldron*, 51 Ill. App. 3d 239, 366 N.E.2d 603 (1st Dist. 1977); *The Wessel Co., Inc. v. Busa*, 28 Ill. App. 3d 686, 329 N.E.2d 414 (1st Dist. 1975).

The injunctive relief Morgan Stanley is requesting is extremely narrow in scope. Under the proposed Order, Defendants are free to work for a competing entity, without restriction; provided only that they not solicit Morgan Stanley's clients or misappropriate confidential information. *See Merrill Lynch v. Kramer*, 816 F. Supp. 1242, 1248 (N.D. Ohio 1992) ("There is nothing in the agreement which prohibits Mr. Kramer from continuing with his occupation as a broker in the securities industry."). Under well-settled Illinois law, a non-solicitation agreement is subject to a lower degree of scrutiny than a covenant not to compete. *Lawrence and Allen*, 685 N.E.2d at 442.

In *Morgan Stanley v. Rothe*, where the Court issued temporary injunctive relief on behalf of Morgan Stanley, the Court recognized that: "The reasonable, limited Agreement is meant to ensure only that the defendant himself does not reach out to his former clients." *Morgan Stanley v. Rothe*, 150 F. Supp.2d 67, 74 (D.D.C. 2001). The various agreements signed by Defendants ensure that they not divert the "lifeblood" of Morgan Stanley's business – its clients.

**EXHIBIT B**

Indeed, even in the <u>absence</u> of the explicit non-solicitation/non-disclosure covenants to which Defendants agreed, Morgan Stanley's client information qualifies as trade secret under the Illinois Trade Secrets Act, 765 ILCS 1065, which expressly provides for the issuance of injunctions upon actual <u>or threatened misappropriation</u>. *See* 765 ILCS 1065/3(a).

The Illinois Trade Secrets Act defines a trade secret as follows:

> <u>"Trade secret" means information</u>, including, but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, <u>financial data, or list of actual or potential customers</u> or suppliers, that: (1) is sufficiently secret to derive independent economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d) (emphasis added).

Morgan Stanley's client list clearly is a trade secret under the Illinois Trade Secrets Act. The economic value of the client list formerly serviced by Defendants is significant, representing approximately $550 million in assets under management and approximately $4.2 million in annual revenues. The information pertaining to Morgan Stanley's clients is not generally known to its competitors. In addition, Morgan Stanley has instituted more than reasonable security procedures to maintain the secrecy of its customer information, including requiring Defendants to sign the nondisclosure and non-solicitation covenants at issue.

Accordingly, courts in Illinois consistently have afforded trade secret status to the exact type of client information at issue here. *See, e.g., Merrill Lynch v. Cross, supra*, 1998 U.S. Dist. LEXIS 3188 at *5 ("Customer lists are entitled to trade secret protection under Illinois law."); *IDS Life Insurance Co. v. Sun America*, 958 F. Supp. 1258, 1279 (N.D. Ill. 1997) ("We find that plaintiffs' customer lists and files are likely to constitute trade secrets."), *aff'd in part,*

**EXHIBIT B**

*vac. in part*, 136 F.3d 537 (7th Cir. 1998); *IDS Financial Services, Inc. v. Smithson,* 843 F. Supp. 415, 418 (N.D. Ill. 1994) (same).

Moreover, courts throughout the country also have afforded trade secret status to the client lists of Morgan Stanley and many other securities firms. *See Morgan Stanley v. Rothe, supra*, 150 F. Supp. 2d at 76 (holding that Morgan Stanley's client list is a trade secret under the District of Columbia's Uniform Trade Secrets Act); *Merrill Lynch v. Zimmerman*, 1996 WL 707107 at *2 (D. Kan. 1996) ("[T]he court concludes that . . . the Documents constitute a trade secret."); *Orbach v. Merrill Lynch*, 1994 WL 900431 (E.D. Mich. 1994) (applying Restatement law and holding that Merrill Lynch's customer list is a trade secret); *Merrill Lynch v. Ran, et al.,* 67 F. Supp.2d 764, 775 (E.D. Mich. 1999) ("Similarly, federal courts have held that Merrill Lynch's customer list is entitled to trade secret status and that confiscation of such a trade secret entitles Merrill Lynch to injunctive relief against the wrongdoer.").

In short, Morgan Stanley clearly has a reasonable likelihood of success on the merits.

B. <u>**Morgan Stanley Has No Adequate Remedy At Law**</u>

It also is well established in Illinois that "*the injury to plaintiffs' reputation and good will, and the resulting loss of existing and future business, is incalculable . . . . The loss of sales and customers as well as the threat of continuation of such losses to a legitimate business interest, as alleged by plaintiffs in the present case, have been held sufficient to constitute irreparable injury.*" *Falcon v. Corr's Beverages, Inc.,* 165 Ill. App. 3d 815, 520 N.E.2d 831, 835 (1st Dist. 1987) *(citing* numerous appellate cases) (emphasis added*). See also A-Tech Computer Services, Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 400, 627 N.E.2d 21, 27 (1st Dist. 1993) ("Once a protectable interest is established, irreparable injury to the plaintiff is presumed if the

interest remains unprotected"). That is exactly why Defendants explicitly agreed to temporary injunctive relief to enforce their nondisclosure and non-solicitation obligations. Indeed, Morgan Stanley will suffer irreparable harm on at least three different levels if an injunction is not granted.

### i. Unquantifiable Damages

First, Morgan Stanley's damages from Defendants' breaches are impossible to determine with any degree of certainty. In *Merrill Lynch v. Salvano, supra*, 999 F.2d at 215, the Seventh Circuit held that the taking of client information and the soliciting of clients "sufficiently supports the court's determinations regarding irreparable harm and the inadequacy of Merrill Lynch's legal remedy." Consistent with the Seventh Circuit's ruling in *Salvano*, and the decisions of scores of courts throughout the country, courts in Illinois have ruled – with virtual unanimity – that the harm to a firm is irreparable where, as here, a former employee solicits clients and misappropriates client information. *See, e.g., IDS Life Insurance Co. v. Sun America*, *supra*, 958 F. Supp. at 1281; *IDS Financial Services, Inc. v. Smithson, supra*, 843 F. Supp. at 418 ("Where trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation of trade secrets will be irreparable.").

### ii. Loss of Confidentiality

Second, irreparable harm lies in the fact that Morgan Stanley clients expect their financial information, their market transactions, and their investment assets to be known only to themselves, Morgan Stanley and the representatives of Morgan Stanley. As one court observed, "[i]rreparable and immeasurable harm lies in the fact that Merrill Lynch clients, when they discover that their financial information, market transactions, and investment assets which they presumed were held in confidence have been disclosed, will lose trust and confidence in Merrill Lynch." *Merrill Lynch v. Kramer*, *supra*, 816 F. Supp. at 1247.

**EXHIBIT B**

### iii. Threat to Office Stability

Third, immediate injunctive relief is necessary to discourage competitor firms from inducing representatives to breach their contracts and divert trade secret client information to a competitor. *See Merrill Lynch v. Patinkin*, 1991 WL 83163 at *6 (N.D. Ill. 1991) ("The Court believes that the denial of the extension of the TRO under the circumstances presented in this case would leave Merrill Lynch vulnerable to the same conduct from other employees. Hence, the potential harm plaintiff faces, on several levels, is enormous.").

In sum, Morgan Stanley will suffer irreparable harm on many different levels unless a TRO and preliminary injunction are granted.

### C. Granting Injunctive Relief Outweighs Denial, Is In the Public Interest And Will Properly Restore the Status Quo

The benefit of injunctive relief to Morgan Stanley far outweighs any detriment to Defendants. An injunction would protect Morgan Stanley's goodwill, business reputation, trade secrets, methods of business operation, and contract rights.

The United States Supreme Court explicitly has recognized the importance of protecting trade secret customer lists. In *Kewanee Oil Co. v. Bicron Corp.*, the Supreme Court emphasized the negative costs to society resulting from the conversion of a company's valuable trade secret customer list and ruled as follows:

> The necessity of good faith and honest, fair dealing is the very life and spirit of the commercial world. **It is hard to see how the public would be benefited by disclosure of customer lists** . . . .

416 U.S. 470 (1974) (emphasis added).

By contrast, Defendants have breached their contractual and other legal obligations to Morgan Stanley. Moreover, Defendants will not be precluded from engaging in their chosen profession. Morgan Stanley seeks only to enjoin Defendants from unfairly

8

competing with Morgan Stanley by violating their covenants not to solicit clients or misuse confidential information.

As the Northern District of Illinois observed in a similar case involving the premeditated breach of contractual and trade secret obligations, "[t]he public has an interest in preventing unfair competition, commercial piracy, misleading solicitations, and in safeguarding the confidentiality of financial records." *IDS Life Insurance Co. v. Sun America, supra*, 958 F. Supp. at 1282: "Consequently," the court explained, "the public's interest has been disserved by defendants' actions" because "**[t]he public has no interest in destroying contracts, rewarding theft, and encouraging unethical business behavior**." *Id.* (emphasis added). Similarly, in *Morgan Stanley v. Rothe*, *supra*, the court held that "[t]he court agrees with the plaintiff that by issuing an injunction, the court serves the public interest in protecting trade-secret client lists and other confidential information. . . ." 150 F.Supp.2d at 79. Finally, an injunction will properly restore the *status quo* as it existed prior to Defendants' unlawful breaches.

## IV. EVEN WHEN ARBITRATION IS REQUIRED, MORGAN STANLEY IS ENTITLED TO INJUNCTIVE RELIEF PENDING ARBITRATION

Even where, as here, a dispute is ultimately resolved in arbitration before FINRA, Morgan Stanley is still entitled to injunctive relief pending the outcome in arbitration. Rule 13804 of the FINRA Code of Arbitration Procedure *expressly permits* a party to seek temporary injunctive relief in Court pending the resolution on the merits before FINRA. Moreover, a party to an arbitration agreement has always been permitted to seek temporary and preliminary injunctive relief in court pending arbitration to preserve the *status quo*. *See, e.g., Blumenthal v. Merrill Lynch*, 910 F.2d 1049, 1053 (2nd Cir. 1990) ("Arbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute. A district court must ensure that the parties get what they

9

bargained for - a meaningful arbitration of the dispute.") (citations omitted). Finally, as previously emphasized, if this Court issues a TRO a hearing on permanent injunctive relief will be scheduled before FINRA within 15 days. In contrast, in the absence of a Court-ordered injunction, no hearing will be set for many months or perhaps even a year, and the arbitration will be rendered "meaningless" and a "hollow formality."

## CONCLUSION

For all of the foregoing reasons, Morgan Stanley respectfully requests that its Motion for a Temporary Restraining Order and Preliminary Injunctive Relief be granted.

Respectfully submitted,

 /s/ Jerry M. Santangelo
Jerry M. Santangelo, Esq.
SPERLING & SLATER, PC
55 West Monroe, Suite 3200
Chicago, Illinois 60603
312-641-3200
312-641-6192 (fax)

Attorneys for Plaintiff

*Of Counsel*:

Christopher C. Coss
Thomas J. Momjian, Esq.
COSS & MOMJIAN, LLP
111 Presidential Boulevard, Suite 214
Bala Cynwyd, PA 19004
610-667-6800
610-667-6620 (fax)


Dated: September 19, 2018