**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-06373 |
| | ) | |
| v. | ) | Hon. Joan B. Gottschall |
| | ) | |
| RONALD OUWENGA, BRIAN THOMAS, MYRON HENDRIX, MICHAEL BRUNER, JEFF SCHIMMELPFENNIG, and ZACHARY BIRKEY, | ) ) ) ) | Magistrate Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
FED.R.CIV.P. 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 2

     A.    The Financial Advisor Employment Agreements ...................................................... 2

     B.    MSSB's Joint Production Policy .............................................................................. 2

     C.    The Code of Conduct ............................................................................................... 3

     D.    MSSB's Deficient and Conclusory Allegations ....................................................... 3

APPLICABLE LEGAL STANDARD ....................................................................................... 4

ARGUMENT ............................................................................................................................. 5

     I.     MSSB FAILS TO COMPLY WITH FED.R.CIV.P. 8(a)(2) .................................. 5

     II.    MSSB'S CLAIMS ARE NOT FACIALLY PLAUSIBLE ..................................... 5

     III.   THE JPM AND JPAs ARE UNENFORCEABLE ................................................. 6

          A.  The JPM and JPAs Are a "Policy," and, in Any Event, MSSB Is Not a Party
              to Any Purported Contract ................................................................................... 6

          B.  The JPM and JPAs Fail for Lack of Mutuality of Obligation ............................. 6

          C.  The JPM and JPAs Fail for Want of Consideration ............................................ 7

          D.  The Non-Retention Restrictions Are Unenforceable ......................................... 8

          E.  The Non-Solicitation Restrictions Are Unenforceable ...................................... 9

     IV.   THE   RESTRICTIVE   COVENANTS   WITHIN   THE   EMPLOYMENT
         AGREEMENT ARE UNENFORCEABLE ......................................................... 11

          A.  The Confidentiality Covenants Are Unenforceable ......................................... 11

          B.  The Non-Solicitation Covenants Are Unenforceable ...................................... 12

     V.    THE CODE OF CONDUCT IS UNENFORCEABLE ........................................ 13

     VI.   MSSB FAILS TO ALLEGE A BREACH OF FIDUCIARY DUTY CLAIM ...... 15

     VII.  MSSB FAILS TO ALLEGE AN UNFAIR COMPETITION CLAIM ................ 16

     VIII. MSSB   FAILS   TO   PROPERLY   ALLEGE   SUBJECT
         MATTER JURISDICTION ................................................................................ 17

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 4, 6

*AssuredPartners, Inc. v. Schmitt*,
    2015 IL App (1st) 141863 ..................................................................... 9, 12, 13

*Bank of New York Mellon v. Fleming*,
    No. 11 C 3573, 2013 WL 241153, (N.D. Ill. Jan. 18, 2013) ............................ 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 4, 5, 6

*Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*,
    378 Ill. App. 3d 437 (1st Dist. 2007) ................................................... 8, 12, 13

*Carlson Grp., Inc. v. Davenport*,
    No. 16-CV-10520, 2016 WL 7212522 (N.D. Ill. Dec. 13, 2016) ..................... 9

*Cincinnati Tool Steel Co. v. Breed*,
    136 Ill. App. 3d 267 (2d Dist. 1985) ............................................................. 11

*Diederich Ins. Agency, LLC v. Smith*,
    2011 IL App (5th) 100048 ............................................................................... 7

*Disher v. Fulgoni*,
    124 Ill. App. 3d 257 (1st Dist. 1984) ............................................................ 10

*Eichmann v. Nat'l Hosp. and Health Care Servs., Inc.*,
    308 Ill. App. 3d 337 (1st Dist. 1999) ............................................................ 12

*Fifield v. Premier Dealer Servs.*,
    2013 IL App (1st) 120327, *cert. denied* 996 N.E.2d 12 .............................. 7, 8

*Georgakis v. Illinois State Univ.*,
    722 F.3d 1075 (7th Cir. 2013) ........................................................................ 5

*Hillman v. Hodag Chem. Corp.*,
    96 Ill. App. 2d 204 (1st Dist. 1968) ............................................................ 6, 7

*Lawlor v. N. Am. Corp. of Illinois*,
    2012 IL 112530 .............................................................................................. 15

*Lawlor v. N. Am. Corp. of Illinois*,
    409 Ill. App. 3d 149 (1st Dist. 2011),
    *aff'd in part, rev'd in part*, 2012 IL 112530 ................................................ 16

*Lawrence & Allen, Inc.* v. *Cambridge Human Res. Grp., Inc.*,
    292 Ill. App. 3d 131 (2d Dist. 1997)............................................................ 13

*N. Am. Paper Co. v. Unterberger*,
    172 Ill. App. 3d 410 (1st Dist. 1988) ........................................................ 12

*PCM Sales, Inc. v. Reed*,
    No. 16-CV-02334, 2017 WL 4310666 (N.D. Ill. Sept. 28, 2017) .................. 10

*Prairie Rheumatology Assocs., S.C. v. Francis*,
    2014 IL App (3d) 140338 ............................................................................ 7

*Reliable Fire Equipment Co.* v. *Arredondo*,
    2011 IL 111871 .......................................................................................... 8

*Robinson v. MSSB*,
    No. 06 C 5158, 2007 WL 2815839 (N.D. Ill. Sept. 24, 2007)...................... 14

*Soderlund Brothers, Inc. v. Carrier Corp.*,
    278 Ill. App. 3d 606 (1st Dist. 1995) ........................................................ 16

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016), *as revised* (May 24, 2016)...................................... 6

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ................................................................. 4, 5

*Thomas v. Guardsmark, LLC*,
    487 F.3d 531 (7th Cir. 2007) .................................................................... 17

*Veco Corp. v. Babcock*,
    243 Ill. App. 3d 153 (1st Dist. 1993) ................................................... 15, 16

*Workman v. United Parcel Service, Inc.*,
    234 F.3d 998 (7th Cir. 2000) .................................................................... 14

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    No. 93 C 5041, 1997 WL 798907 (N.D. Ill. Dec. 24, 1997),
    *aff'd and remanded*, 182 F.3d 1340 (Fed. Cir. 1999) .................................... 16

**Statutes**

Fed.R.Civ.P. 12(b)(6).................................................................................... 1, 4

Fed.R.Civ.P. 8(a)(2)...................................................................................... 1, 5

Ronald Ouwenga, Brian Thomas, Myron Hendrix, Michael Bruner, Jeff Schimmelpfennig, and Zachary Birkey ("Defendants"), pursuant to Fed.R.Civ.P. 12(b)(6), seek dismissal of the Amended Complaint (Dkt. 35) filed by Morgan Stanley Smith Barney LLC ("MSSB"):

## PRELIMINARY STATEMENT

MSSB filed this lawsuit against six of its former employees – concluding that "Defendants" (although it only alleges that Michael Bruner "asked" a customer to move an account) wrongfully solicited its customers (which ones it does not say) and Defendants (which ones it does not say) retained its information (which specific information it does not identify). Each claim should be dismissed *with prejudice* for the following reasons:

1. MSSB fails to comply with Fed.R.Civ.P. 8(a)(2)'s requirement to include a short and plain statement showing that it is entitled to relief against each particular Defendant;

2. MSSB's claims fail the facial plausibility standard, relying upon speculation, suspicion, conjecture, guesses, and hunches and, also, fail to allege an injury-in-fact;

3. With respect to the Joint Production Memorandum Agreement and the Joint Production Arrangement Policy – 2015 addressed in Count I, as matter of law, no claim exists because: (a) this is a policy not a contract with MSSB; (b) MSSB is not a party to the Joint Production Memorandum Agreement or the Joint Production Arrangement Policy – 2015; (c) there is no mutuality of obligation; (d) there is not adequate consideration; (e) the non-retention restriction is overbroad and covers even public information; (f) there is no breach alleged; and (g) the non-solicitation restriction is: (i) overbroad (ii) is a disguised non-compete lacking a geographic limitation, because it precludes solicitation involving products and services not provided by MSSB; and (iii) there is no breach alleged;

4. With respect to the Employment Agreements allegedly signed by two of the Defendants and addressed in Count I, as a matter of law, no claim exists because: (a) there is a lack of adequate consideration; (b) the confidentiality covenant is overbroad and covers public information; (c) the confidentiality provision lacks a geographic or temporal limitation; (d) there is no breach alleged; (e) the non-solicitation covenant is overbroad; and (f) the non-solicitation covenant, which precludes solicitation involving products and services not provided by MSSB, is a disguised non-compete lacking a geographic limitation;

5. With respect to the Code of Conduct addressed in Count I, as matter of law, no claim exists because: (a) the Code of Conduct contains a clear, plain, and express disclaimer that

it is not a contract; (b) there is no mutuality of obligation; (c) there is a lack of adequate consideration; (d) the confidentiality restriction is overbroad covering even public information; (e) the confidentiality restriction lacks a geographic or temporal restriction; and (f) there is no breach alleged;

6. MSSB fails to allege breach of fiduciary duty; and

7. MSSB fails to allege unfair competition.

## FACTUAL BACKGROUND

### A. The Financial Advisor Employment Agreements

Although this whole dispute concerns MSSB's allegations of improper solicitation and retention of confidential information, MSSB alleges that only two of the six Defendants, Myron Hendrix and Ronald Ouwenga, were subject to Financial Advisor Employment Agreements (the "Employment Agreements"). *Amended Complaint* attached hereto as *Exhibit 1* at Ex. C. Each of these Employment Agreements contained confidentiality restrictive covenants, Section 2.1 through Section 2.3, and a non-solicitation covenant, Section 3.2. *Id.*

### B. MSSB's Joint Production Policy

Lacking Employment Agreements for the four other Defendants, MSSB points to the "JOINT PRODUCTION MEMORANDUM AGREEMENT (TEAM) And Joint Production Schedule 'A' Client List" (the "JPM") and "Morgan Stanley Wealth Management Joint Production Arrangement Policy – 2015" (the "JPAs"), allegedly signed by Defendants on November 3, 2017. *Exhibit 1* at Ex. A-B. It does so because MSSB is desperate to take advantage of a non-solicitation restriction and non-retention restriction set forth in Section I of the JPAs, which pertain solely and exclusively to a limited set of "Client Accounts." *Exhibit 1* at Ex. A, §I.

Collectively, the JPM and JPAs set forth and structure MSSB's "Policy" with respect to financial advisors who wish to join efforts and work as a team with respect to certain customers

2

defined as "Client Account[s]." *Exhibit 1* at Ex. A, §I. But neither the JPM nor the JPA are contracts with MSSB, impose any duties or obligations upon MSSB, or are subject to any definite term. Indeed, neither the JPM nor the JPA recite any consideration awarded to the joint producers nor grant any consideration by MSSB to any of the joint producers. *Id.* And there is no where else to turn, because the JPA provides that "[t]he JP Policy is the only policy setting forth the Firm's then current joint production arrangement policy" and the JPM, in turn, provides "[t]his Agreement replaces and supersedes all earlier agreements pertaining to Joint Producers jointly serving Client Accounts." *Exhibit 1* at Ex. A, §I; Ex. B, p. 1. Finally, not only can MSSB terminate the JPM and JPAs for any reason, or no reason, at any time, it can also modify or change the terms in its sole discretion. *Id.* at Ex. A, p. 1, §I, §II; Ex. B, p. 1.

### C. The Code of Conduct

Further relying upon mere policy, MSSB alleges that its Code of Conduct provides an additional contractual "commitment" by Defendants to maintain the confidentiality of MSSB's information. *Exhibit 1* at ¶¶29-32. MSSB attached to its Amended Complaint an excerpt of the 2017 Code of Conduct – although it was inapplicable when Defendants resigned in September 2018 – and an excerpt of the 2018 Code of Conduct. It has also provided Defendants with complete copies of the 2017 and 2018 Code of Conduct. *Exhibits 2* and *3*, *respectively*. Among other things, the Code of Conduct (both the 2017 and 2018 version) provide a clear and express disclaimer that the Code of Conduct is not a contract. *Exhibit 2* at p. 60; *Exhibit 3* at p. 22.

### D. MSSB's Deficient and Conclusory Allegations

MSSB alleges that following Defendants' resignation, on September 13, 2018, they have been soliciting MSSB clients. *Exhibit 1* at ¶44. While MSSB alleges that Michael Bruner "asked" a client to move to Stifel, with respect to the others it alleges only that it "believes" "one

or more of Defendants solicited clients. . . ." *Id.* at ¶5, ¶44. And, even with respect to the allegation pertaining to Michael Bruner, there is no allegation that the alleged "ask" occurred before the client expressed an interest to follow Bruner to Stifel. MSSB, also, alleges that it "believes" some Defendant (it does not say who) retained "information pertaining to MSSB clients…" *Id.* at ¶11. MSSB does not identify what specific information was purportedly retained but only that it "believes" it may have been retained. *Id.*

Despite the fact that no Defendant, other than Ouwenga and Hendrix, were party to an FA Agreement, MSSB includes all Defendants in Count I, breach of contract, which seeks relief for, among other things, breach of FA Agreements. Additionally, despite the inability to articulate any allegation of any wrongdoing, MSSB concludes that "Defendants have breached the provisions of their Agreements (and FA Agreements signed by Defendants Ouwenga and Hendrix) and Code of Conduct [Count I]…" *Id.* at ¶49. MSSB, additionally, concludes that Defendants have violated their duty of loyalty to MSSB. *Id.* at ¶¶51-57. And, finally, MSSB claims Defendants have engaged in acts of unfair competition [Count III]. *Id.* at ¶¶58-62.

## APPLICABLE LEGAL STANDARD

A complaint must be dismissed under Fed.R.Civ.P. 12(b)(6) where it fails to plead "… enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (plaintiff cannot rely upon an "imaginative reader"). Legal conclusions contained in a complaint "are not entitled to any assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). If the claims are only conceivable, not plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

4

**ARGUMENT**

**I.    MSSB FAILS TO COMPLY WITH FED.R.CIV.P. 8(a)(2)**

Other than stating that Michael Bruner "asked" a client (critically, without alleging whether the client was a "Client Account") to transfer an account, MSSB fails to allege anything approaching wrongdoing or breach of contract committed by the Defendants. Thus, MSSB fails to provide a short and plain statement showing that it is entitled to relief against each Defendant in compliance with Fed.R.Civ.P(8)(a)(2).  *See Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1078 (7th Cir. 2013) (noting that lawsuit had previously been dismissed because "… plaintiff failed to identify a specific defendant…").[1]

**II.   MSSB'S CLAIMS ARE NOT FACIALLY PLAUSIBLE**

MSSB was required to do more than rely upon speculation, suspicion, conjecture, guesses, and hunches.  As specifically held by the Seventh Circuit in *Swanson* federal law required MSSB to do more than ask an imaginative reader to make unsupported inferential leaps. But MSSB did not satisfy the federal pleading standard.  MSSB: (a) failed to plead that any of the Defendants solicited a "Client Account," retained or took any MSSB information, interfered with any customer relationship, or any other breach or wrong, relying on the general description "Defendants"; (b) failed to plead, as discussed below, the breach of any contract, breach of fiduciary duty, or the breach of any unfair competition rule; and (c) failed to plead any damage or injury as a result of any purported wrongful conduct.  The Amended Complaint simply does not rise above the speculative level. *Twombly*, 550 U.S. at 555.

MSSB cannot simply throw around the word "Defendants," claim the benefit of a breach "inured" to all of them, and, thus, a breach by one is a breach by all.  That simply makes no

---

[1] As noted in Defendants' Response to MSSB's TRO (Dkt. 16), 4 of the 6 Defendants are also not referenced in any of the affidavits submitted by MSSB - Ronald Ouwenga, Myron Hendrix, Jeff Schimmelpfennig or Zachary Birkey.

sense. These are individuals, and try as MSSB may, they are legally separate and cannot be held liable as an entity. This is not a plausible legal theory. And MSSB's conclusory (and repeated) assertion "Defendants" is exactly the kind of "'naked assertion[]' devoid of 'further factual enhancement'" that cannot withstand a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949, *quoting Twombly*, 550 U.S. at 557.

Last, the failure to plead anything other than speculation of a breach or wrong, fails the constitutional minimum of an "injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (an injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical").

## III. THE JPM AND JPAs ARE UNENFORCEABLE

### A. The JPM and JPAs Are a "Policy," and, in Any Event, MSSB Is Not a Party to Any Purported Contract

The JPM and JPAs indisputably demonstrate that: (1) MSSB is not a party to these purported agreements; (2) the JPA is a "Policy" not a contract with MSSB; (3) MSSB did not sign any JPA; (4) it merely reviewed and approved the JPM; and (5) MSSB has no duties or obligations under either the JPM or JPAs. And, as a non-party, MSSB lacks standing. *See e.g.*, *Bank of New York Mellon v. Fleming*, No. 11 C 3573, 2013 WL 241153, at *2 (N.D. Ill. Jan. 18, 2013).

### B. The JPM and JPAs Fail for Lack of Mutuality of Obligation

It is well-established in Illinois "that mutuality of obligation is necessary to the establishment of a valid employment contract ..." *Hillman v. Hodag Chem. Corp.*, 96 Ill. App. 2d 204, 207 (1st Dist. 1968). This means "... that both parties are bound or neither is bound." *Id.* "Mutuality, or the lack of it, must be determined as a matter of construction from a

consideration of the language employed by the parties in their contract …" *Id.*  Neither the JPM nor the JPAs have a single term binding MSSB in any way.  Neither the JPM nor the JPAs have any definite period of duration. MSSB could have, on November 3, 2017 (the date of execution), immediately terminated any of the Defendants.  In other words, MSSB is not bound by either the JPM or JPA, was never bound by the JPM or JPA, and there is a lack of mutuality of obligation, which means there is no contract as a matter of law.

C.      **The JPM and JPAs Fail for Want of Consideration**

Under Illinois law, in order for a post-employment restrictive covenant to be enforceable, it must be supported by "adequate consideration" consisting of employment for a "substantial period" of time after execution of the covenant that the former employer seeks to enforce. *Fifield v. Premier Dealer Servs.*, 2013 IL App (1st) 120327, ¶¶13-14, *cert. denied* 996 N.E.2d 12.  In *Fifield*, the Illinois appellate court reaffirmed "… that there must be at least two years or more of continued employment to constitute adequate consideration in support of a restrictive covenant" or the promise of employment is simply illusory.  *Id.* at ¶19; *see also Prairie Rheumatology Assocs., S.C. v. Francis*, 2014 IL App (3d) 140338, ¶3, ¶5, ¶16, ¶19; *Diederich Ins. Agency, LLC v. Smith*, 2011 IL App (5th) 100048, ¶¶3-5, ¶¶14-15. Here, MSSB cannot clear the two-year threshold as the JPM and JPAs were signed on November 3, 2017 and MSSB alleges that Defendants resigned on September 13, 2018.  *Exhibit 1* at ¶1, Ex. A-B.

Further belying any possibility of consideration, Defendants did not receive *any* continued employment in return for their execution of the JPAs or JPM.  Unlike the typical situation involving an employment agreement, where continued employment is contingent on an employee's execution of an employment agreement containing post-employment restrictive covenants, Defendants' employment here was not in any way contingent on signing the JPM or

7

JPAs. MSSB simply blessed an agreement between the Defendants. Accordingly, for this reason as well, MSSB clearly did not and could not plead adequate consideration.

Finally, MSSB's argument that Defendants received "additional benefits/or consideration as a result of participating in a joint production agreement" is, quite simply, a red herring. *Exhibit 1* at ¶37. In the Amended Complaint, MSSB contends that being part of the joint production policy makes participants eligible for higher payouts, which does not appear to be mentioned in the JPM or JPAs. *Id.* But, even if MSSB could point to something, as noted above, MSSB was expressly permitted to modify or terminate the joint production policy at any time for any reason. What is more, any purported continued eligibility for a higher payout is, at best, illusory, because unlike some tangible contemporaneous consideration paid at the time of execution, MSSB could have at any time (even the very moment after Defendants signed the JPM and JPAs) stripped Defendants of the purported possibility of a higher payout by terminating the JPM/JPA arrangement while requiring Defendants to honor the non-solicitation and non-retention restrictions. Thus, it is manifest, that the circumstances here are no different than *Fifield* and the slew of other cases cited above (*see supra*) addressing adequacy of consideration because there could never be more than an illusory promise.

### D. *The Non-Retention Restrictions Are Unenforceable*

The enforceability of a restrictive covenant is a question of law. *Reliable Fire Equipment Co.* v. *Arredondo*, 2011 IL 111871, ¶12. Restrictive covenants will only be enforced if "they are no broader than necessary to protect the employer's legitimate business interest." *Cambridge Engineering, Inc.* v. *Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 452 (1st Dist. 2007).

The non-retention restrictions set forth in Section IV of the JPAs are unenforceable as a matter of law. The non-retention restrictions preclude "ret[ention] of any information regarding

any such Client Accounts, including, but not limited to, a list of MSSB client names and/or client contact information." *Exhibit 1* at Ex. A, Section IV. The non-retention restrictions embrace every morsel of information regarding any Client Account, including information that was not generated by MSSB, and includes public information. For example, information obtained from a Client Account's publicly available website would be covered. There is no possibility that MSSB could have a legitimate interest this broad.

Such overbroad confidentiality restrictions have repeatedly been found unenforceable under Illinois law. *AssuredPartners, Inc. v. Schmitt*, 2015 IL App (1st) 141863, ¶46 (confidentiality provision that covered information without regard to whether it was "proprietary or confidential in nature" was overbroad and unenforceable under Illinois law); *Carlson Grp., Inc. v. Davenport*, No. 16-CV-10520, 2016 WL 7212522, at *4 (N.D. Ill. Dec. 13, 2016).

Finally, there is no allegation that Defendants breached the non-retention restriction. All that is alleged is vague conclusions - "... files pertaining to a large institutional client appear to be missing" and MSSB believes Defendants "retained information," and simply giving a list of information that could possibly have been retained. *Exhibit 1* at ¶11, ¶15. And even this does not state whether any such information relates to "Client Accounts," which it must under the non-retention provision.

### E. *The Non-Solicitation Restrictions Are Unenforceable*

Pursuant to the non-solicitation restriction in the JPAs, MSSB sought to preclude Defendants from engaging in business with *any* "Client Account" in *any* capacity, in *any* place, and involving *any* line of business of which MSSB or even *any* of its affiliated businesses is engaged. *Exhibit 1* at Ex. A, Section IV. Even if a defendant's subsequent employment involved activity unrelated to his prior role at MSSB, and the reason for communicating with a

9

person falling within "Client Accounts" involved this unrelated activity, the JPAs would preclude solicitation for this unrelated service or product so long as a MSSB affiliated business operated in that market. For example, if a defendant left MSSB and went into the life insurance business, he would be precluded from soliciting a "Client Account" with respect to life insurance as long as a MSSB affiliated business sold life insurance. MSSB cannot possibly have a legitimate interest in precluding solicitation by Defendants in connection with products and/or services that MSSB did not provide. The non-solicitation covenants are, therefore, unenforceable as a matter of law. *See e.g., PCM Sales, Inc. v. Reed*, No. 16-CV-02334, 2017 WL 4310666, at *6 (N.D. Ill. Sept. 28, 2017) (non-solicitation covenant that defined employer to include its affiliates, and, thus, covered unrelated goods and services, was overbroad).

Because the JPAs extend non-solicitation protection to MSSB's affiliated businesses involving products and services that were not sold or provided by MSSB, the non-solicitation covenants are disguised non-compete arrangements lacking any geographic scope. Indeed, with respect to "Client Accounts," the non-solicitation covenant is intended to prevent *any* competition with *any* MSSB business affiliate, *anywhere* in the world, and with respect to *any* products and services whether or not those products and services are the type engaged in by MSSB. Thus, the restrictions in Section IV are unenforceable as a matter of law. *Disher v. Fulgoni*, 124 Ill. App. 3d 257, 261 (1st Dist. 1984) (non-competition covenants require geographic limitations).

Finally, there is no allegation that the unnamed allegedly solicited customers (or the customer allegedly "asked" by Michael Bruner) are covered "Client Account[s]," and the non-solicitation restriction in the JPAs is limited to "Client Account." Thus, there is no allegation to demonstrate that the JPA is even applicable here.

10

## IV.    THE RESTRICTIVE COVENANTS WITHIN THE EMPLOYMENT AGREEMENT ARE UNENFORCEABLE

### A.    *The Confidentiality Covenants Are Unenforceable*

The Employment Agreements' confidentiality restrictions, Sections 2.1 through 2.3, are unenforceable as a matter of law.[2]

First, with respect to "Trade Secrets," Section 2.1, the Employment Agreements fail to limit this term to only non-public information – stating, instead, that it is information not known to the "general public." ***Exhibit 1*** at Ex. C. The Employment Agreements provide examples of eight categories of information that MSSB believes are "Trade Secrets" but include the catchall "but is not limited to…" *Id.* This, of course, was intended to expand the definition of so-called "Trade Secrets" to virtually anything relating to MSSB. Ultimately, there is no meaningful way to determine what is and what is not "Trade Secrets."

Second, with respect to "Company Records," Section 2.2, this category is even broader and contains absolutely no suggestion of any limitation. "Company Records" is not even limited to nonpublic information. It covers any and all information "…concerning the business and affairs of MSSB and its employees…," which would include any information Myron Hendrix and Ronald Ouwenga obtained, public or not, while employed by MSSB.

As set forth in Section III D *supra*, such overbroad restrictions are unenforceable as a matter of law.

Additionally, Sections 2.1, 2.2, and 2.3 do not contain a temporal or geographic limitation and, thus, for this reason as well, Section 2.1 through 2.3 are unenforceable as a matter of law. *Cincinnati Tool Steel Co. v. Breed*, 136 Ill. App. 3d 267, 276 (2d Dist. 1985) (confidentiality provision containing "no duration of its disclosure provision" nor "geographic

---

[2] Plaintiff, MSSB, is not the employer listed in the Employment Agreements. ***Exhibit 1*** at Ex. C

limitation" is unenforceable under Illinois law); *N. Am. Paper Co. v. Unterberger*, 172 Ill. App. 3d 410, 415-16 (1st Dist. 1988).

What is more, MSSB never alleges if the Employment Agreements were allegedly breached due to a violation of Section 2.3 due to an alleged action involving "Trade Secrets" or "Company Records," preventing anyone from making sense of its Amended Complaint.

Finally, there is no allegation that Myron Hendrix or Ronald Ouwenga breached a duty of confidentiality with respect to any information. All that is alleged is vague conclusions – "… files pertaining to a large institutional client appear to be missing" and MSSB "believes" Defendants "retained information…" *Exhibit 1* at ¶11, ¶15.

### B.    The Non-Solicitation Covenants Are Unenforceable

The non-solicitation covenant set forth in Section 3.2 is, likewise, broader than necessary if its purpose is to preclude Hendrix and Ouwenga from "abusing the specific client relationships [they] built up during [their] time with the company." *Cambridge Eng'g, Inc.*, 378 Ill. App. 3d at 455; *AssuredPartners*, 2015 IL App (1st) 141863 at ¶¶39-40; *Eichmann v. Nat'l Hosp. and Health Care Servs., Inc.*, 308 Ill. App. 3d 337, 345 (1st Dist. 1999) ("… an activity restraint must be reasonably related to the employer's interest in protecting customer relations that its employees developed as a direct result of the employment"). Section 3.2 limits Hendrix and Ouwenga from soliciting "… any of MSSB's customers who were served by [them], or whose names became known to [them] while in the employ of MSSB..." *Exhibit 1* at Ex. C, Section 3.2. That is, this covenant covers relationships that were not developed by Hendrix or Ouwenga, as well as past and future customers of MSSB and its affiliates, as long as their name became known to Hendrix or Ouwenga while employed by MSSB. There is no basis in Illinois law for

such a wildly overbroad restriction and MSSB certainly goes well beyond any legitimate interest it might have.

In *AssuredPartners* the court rejected an employer's attempt to restrict a former employee from soliciting not just the customer relationships he may have built while in the employ of plaintiff, but, like here, even potential future customers of plaintiff and its subsidiaries. 2015 IL App (1st) 141863, ¶17, ¶¶39-40. Relying on *Cambridge*, and affirming the circuit court, the appellate court stated that the covenant was "… broader than necessary to protect plaintiffs' interest in preventing Schmitt from exploiting the client relationships he developed and maintained during his employment at ProAccess." *Id.* at ¶40; *see also Cambridge*, 378 Ill. App. 3d at 455; *Lawrence & Allen, Inc.* v. *Cambridge Human Res. Grp., Inc.*, 292 Ill. App. 3d 131, 139 (2d Dist. 1997).

Additionally, akin to the JPAs, the non-solicitation covenant precludes solicitation for business involving products or services beyond those provided by MSSB and covers products and services sold by MSSB's affiliated businesses. And for the same reasons as set forth above in Section III E, the covenant is unenforceable.

Finally, there is no allegation that Hendrix or Ouwenga solicited anyone, instead only the catchall "one or more Defendants…" based on MSSB's belief. *Exhibit 1* at ¶5, ¶44.

## V.     THE CODE OF CONDUCT IS UNENFORCEABLE

With respect to the 2018 Code of Conduct, which replaced the 2017 version, this document (as well as the 2017 version) contains a clear, express, and binding disclaimer that the Code of Conduct is not a contract - "[t]his Code is not a contract guaranteeing your employment or entitling you to any special privileges, rights or benefits." *Exhibit 2* at p. 60; *Exhibit 3* at p. 22. This is dispositive of the matter, and MSSB is barred from proceeding on any breach

allegedly arising from the Code of Conduct. *Robinson v. MSSB*, No. 06 C 5158, 2007 WL 2815839, at *16 (N.D. Ill. Sept. 24, 2007), *citing Workman v. United Parcel Service, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) ("[a] clear and forthright disclaimer 'is a complete defense to a suit for breach of contract based on an employee handbook'" and dismissing breach of contract claim based on policies in employee handbook).

What is more: (a) the Code of Conduct fails for lack of mutuality of obligation; (b) fails for want of consideration as Defendants did not work for two years following adoption of the 2018 Code of Conduct; (c) the definition of confidential information is wildly overbroad and includes literally every piece of information related to Defendants' employment ("information that you create, develop, receive, use, learn or have access to by virtue of your employment at MSSB that is not generally known to the public and that is sufficiently sensitive that loss or unauthorized disclosure or access could result in legal, regulatory or reputational harm to MSSB or our clients"); and (d) the Code of Conduct is not subject to any temporal or geographic limitation. *Exhibit 3* at p. 15; *see also supra* Section III B-D and Section IV A. Any claim predicated upon the Code of Conduct is barred as a matter of law.

Finally, there is no allegation that Defendants breached a duty of confidentiality with respect to any information. All that is alleged is vague conclusions – "… files pertaining to a large institutional client appear to be missing," and MSSB "believes" Defendants "retained information," providing a list of possible types of information that could have been retained. *Exhibit 1* at ¶11, ¶15.

14

## VI.    MSSB FAILS TO ALLEGE A BREACH OF FIDUCIARY DUTY CLAIM

"To state a claim for breach of fiduciary duty, it must be alleged and ultimately proved: (1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains."  *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶69.  MSSB fails to allege any of the elements of a breach of fiduciary duty claim.

In support of its breach of fiduciary duty claim, MSSB alleges: (a) that Zach Birkey signed a Stifel offer letter before he resigned, (b) Brian Thomas sent MSSB clients their own account performance information before he resigned (there is no allegation that he possesses such information) and (c) the retention of some information by unidentified "Defendants," which MSSB "believes" might have happened.

*Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1st Dist. 1993) debunks MSSB's claim with respect to Birkey, a person alleged to have been an employee not a corporate officer, because it has long been Illinois law that an employee can prepare to resign. The fact that Birkey did not disclose that he was considering accepting a new job to MSSB cannot state a claim for breach of fiduciary duty, as every employee from the top to the bottom would be exposed to lawsuit by simply choosing to resign after going through the interview process with a new employer and confirming to the new employer that she/he plans on becoming employed by the new employer.  This is obviously illogical as an employee would be forced to quit before knowing whether a new job would be waiting for her/him.

With respect to Brian Thomas' alleged conduct, MSSB does not come close to explaining how sending a client its own account performance information could be contrary to MSSB's interests. The argument is not plausible because until the moment he resigned, Brian Thomas

was allowed to send clients their own account performance information from MSSB for the clients' use in dealing with the clients' MSSB accounts. *Lawlor v. N. Am. Corp. of Illinois,* 409 Ill. App. 3d 149, 172 (1st Dist. 2011), *aff'd in part, rev'd in part,* 2012 IL 112530, *citing Veco,* 243 Ill. App. 3d at 160 (breach of fiduciary duty of loyalty requires disclosure of confidential information to a competitor)

Finally, to the extent that MSSB "believes" that "Defendants," which one it does not say, retained any MSSB information (what exactly it does not say), not only is this speculation, there is no allegation that any Defendant provided any of MSSB's information to a competitor nor used such information. Not only can this guess not support an alleged breach of fiduciary duty, there is no allegation of injury – just more speculation. *Lawlor,* 409 Ill. App. 3d at 172, *citing Veco,* 243 Ill. App. 3d at 160.

## VII.    MSSB FAILS TO ALLEGE AN UNFAIR COMPETITION CLAIM

Unfair competition is generally understood "to fall under the rubric of tortious interference with prospective economic advantage." *Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1997 WL 798907, at *14 (N.D. Ill. Dec. 24, 1997), *aff'd and remanded*, 182 F.3d 1340 (Fed. Cir. 1999) (internal quotations omitted) (citations omitted). The elements of a claim for tortious interference with prospective economic advantage are: "(1) plaintiff's reasonable expectation of entering a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful or intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1st Dist. 1995). MSSB has not alleged a single fact with respect to any of these elements. Other than with respect to Michael Bruner, all that MSSB

alleges is a mechanical recitation of the elements listed above. And even with Bruner there is no allegation that the customer at issue was a "Client Account," which could be the only possible basis to claim interference. Thus, the unfair competition claim must be dismissed.

## VIII. MSSB FAILS TO PROPERLY ALLEGE SUBJECT MATTER JURISDICTION

The Seventh Circuit holds that "[f]or diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Accordingly, a plaintiff's jurisdictional statement "must identify the citizenship of each of its members as of the date the complaint ... was filed, and, if those members have members, the citizenship of those members as well." *Id.* Here, MSSB provides that it is a limited liability company and its sole member, Morgan Stanley Smith Barney Holdings LLC, is a limited liability company incorporated in Delaware with its principal place of business in New York. MSSB does not identify Morgan Stanley Smith Barney Holdings LLC's members by name, nor does it identify whether any of those members are themselves limited liability companies, which would require further allegations of citizenship of these members in order to demonstrate subject matter jurisdiction. Accordingly, MSSB failed to set forth the requisite allegations to demonstrate subject matter jurisdiction.

WHEREFORE, Defendants request that this Court dismiss each of the claims asserted by MSSB *with prejudice* and grant such other relief as this Court deems appropriate under the circumstances.

Dated: November 5, 2018

Respectfully submitted,

**DEFENDANTS, RONALD OUWENGA, BRIAN THOMAS, MYRON HENDRIX, MICHAEL BRUNER, JEFF SCHIMMELPFENNIG, and ZACHARY BIRKEY**

By: */s/ Jason B. Hirsh*
      One of Their Attorneys

Gary I. Blackman (ARDC #6187914)
Jason B. Hirsh (ARDC #6283094)
Jamie L. Burns (ARDC #6300120)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
Tel.:   (312) 346-8380
Fax:   (312) 346-8434
gblackman@lplegal.com
jhirsh@lplegal.com
jburns@lplegal.com

18

## <u>CERTIFICATE OF SERVICE</u>

I, Jason B. Hirsh, an attorney, hereby certify that on November 5, 2018, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties registered with the CM/ECF system. I served a true and correct copy of the foregoing on any party not registered with the CM/ECF system via electronic mail on November 5, 2018.

_/s/ Jason B. Hirsh_