IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MORGAN STANLEY SMITH BARNEY LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No.  18-cv-06373** |
| | : | |
| **v.** | : | **Hon. Joan B. Gottschall** |
| | : | |
| **RONALD OUWENGA, BRIAN THOMAS,** | : | **Magistrate Sidney I. Schenkier** |
| **MYRON HENDRIX, MICHAEL BRUNNER,** | : | |
| **JEFF SCHIMMELPFENNIG, and ZACHARY** | : | |
| **BIRKEY,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION

## TABLE OF CONTENTS

I.   INTRODUCTION..............................................................................1

II.  LEGAL DISCUSSION......................................................................2

    A.   The Court Does Not Have Jurisdiction to Grant Defendants' Motion........2

    B.   Morgan Stanley Has Complied with Fed. R. Civ .P. 8(a)(2)...................4

    C.   Morgan Stanley's Claims are Facially Plausible...............................5

    D.   Morgan Stanley is a Party to the JPMs and JPAs..............................8

    E.   The Agreements Do Not Fail for Lack of Mutuality............................8

    F.   The Agreements Do Not Fail for Lack of Consideration.......................9

    G.   The Confidentiality Covenants are Enforceable...............................10

    H.   The Non-Solicitation Covenants are Enforceable.............................12

    I.   The Code of Conduct is Enforceable............................................15

    J.   Morgan Stanley Adequately Alleges a Duty of Loyalty Claim...............16

    K.   Morgan Stanley Adequately Alleges an Unfair Competition Claim..........17

    L.   Subject Matter Jurisdiction Exists Over this Dispute...........................17

CONCLUSION...............................................................................18

# TABLE OF AUTHORITIES

## Cases

*Abbot-Interfast Corp. v. Harkabus,*
  250 Ill. App. 3d 13 (Ill. App. 1993) ........................................................................................ 11

*Allied Waste Servs. of N.Am., LLC v. Tibble,*
  177 F. Supp.3d 1103 (N.D. Ill. 2016) ....................................................................................... 1

*Archer Daniels Midland Co. v. Whitacre,*
  60 F. Supp. 2d 819 (C.D. Ill. 1999) ........................................................................................ 12

*AssuredPartners, Inc. v. Schmitt,*
  2015 Il. App. (1st) 141863, (2015) ............................................................................. 11, 14, 15

*Cambridge Eng'g., Inc. v. Mercury Partners 90 BI, Inc.,*
  378 Ill App.3d 437 (1st Dist. 1997) ................................................................................. 14, 15

*Cincinnati Tool Steel Co. v. Breed,*
  136 Ill. App.3d 267 (2d Dist. 1985) ........................................................................................ 12

*Coady v. Harpo, Inc.,*
  308 Ill. App.3d 153 (1st Dist. 1999) ....................................................................................... 12

*Design Benefit Plans, Inc. v. Enright,*
  940 F. Supp. 200 (N.D. Ill. 1996) ............................................................................................. 9

*Disher v. Fulgoni,*
  124 Ill. App.3d 257 (1st Dist. 1984) ....................................................................................... 13

*Eichmann v. National Hosp. & Health Care Services,*
  308 Ill. App. 3d 337 (1st Dist.1999) ................................................................................. 12, 14

*Fifield v. Premier Dealer Servs.,*
  2013 IL App (1st) 120327. (Defendants' MOL at 7) ................................................................ 9

*Georgakis v. Illinois State Univ.,*
  722 F.3d 1075 (7th Cir. 2013) .................................................................................................. 4

*Hillman v. Hodag Chem. Corp.,*
  96 Ill. App.2d 204 (1st Dist. 1968) ........................................................................................... 8

*IDS Financial Services, Inc. v. Smithson,*
  843 F. Supp. 415 (N.D. Ill. 1994) ........................................................................................... 14

*Lawrence v. Allen, Inc. v. Cambridge Human Res. Grp., Inc,*
  292 Ill. App.3d 131 (2d Dist. 1997) ......................................................................... 14

*LKQ Corp. v. Thrasher,*
  785 F. Supp.2d 737 (N.D. Ill. 2011) ........................................................................ 10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Salvano,*
  999 F.2d 211 (7th Cir. 1993) ................................................................................... 12

*Montel Aetnastak, Inc. v. Miessen,*
  998 F. Supp.2d 694 (N.D. Ill. 2014) ........................................................................ 10

*N. Am. Paper Co. v. Unterberger,*
  172 Ill. App.3d 410 (1st Dist. 1988) ........................................................................ 12

*Veco Corp. v. Babcock,*
  243 Ill. App.3d 153 (1st Dist. 1993) ........................................................................ 16

## Rules

Fed. R. Civ .P. 8(a)(2) ..................................................................................................... 4, 5

## Other Authorities

*Airgas United States, LLC v. Adams,*
  2016 U.S. Dist. LEXIS 82869, at *7 (N.D. Ill.  June 27, 2016) ................................... 9

*Apex Physical Therapy, LLC v. Ball,*
  2017 U.S. Dist. LEXIS 115859, at *7 (S.D. Ill. July 24, 2017) .................................... 1

*Avison Young-Chicago, LLC v. Puritz,*
  2017 U.S. Dist. LEXIS 196189 at *16 (N.D. Ill.  Nov. 29, 2017) ...................... 10, 11

*Benjamin v. Marshal P. Morris Profit Sharing Plan & Trust,*
  1998 U.S. Dist. LEXIS 8358, at *5 (N.D. Ill. May 19, 1998) ...................................... 2

*Carlson Group, Inc. v. Davenport,*
  2016 U.S. Dist. LEXIS 171915, at *8 (N.D. Ill.  December 13, 2016) ...................... 11

*Cornerstone Assurance Grp., Inc. v. Harrison,*
  2017 U.S. Dist. LEXIS 165735 (N.D. Ill.  Oct. 5, 2017) ............................................. 7

*Davis v. Bank of Am. Corp.,*
  2017 U.S. Dist. LEXIS 19740, at *9 (N.D. Ill. Feb. 13, 2017) .................................... 5

*Frerichs v. Credential Services, et al.*,
   1999 U.S. Dist. LEXIS 22811, at *20 (N.D. Ill. Sept. 30, 1999) ................................................ 9

*Guzman v. Target Corp.*,
   2018 U.S. Dist. LEXIS 193563, at *3 (N.D. Ill. November 14, 2018) ....................................... 2

*Merrill Lynch v. Cross*,
   1998 U.S. Dist. LEXIS 3188 (N.D. Ill. 1998) ............................................................... 12, 13, 14

*Merrill Lynch, Pierce, Fenner & Smith v. Patinkin*,
   1991 U.S. Dist. LEXIS 6210, at *2 (N.D. Ill. May 9, 1991) .................................................... 12

*PCM Sales, Inc. v. Reed*,
   2017 U.S. Dist. LEXIS 159687 (N.D. Ill.  Sept. 28, 2017) ............................................... 13, 15

*R.J. O'Brien & Assocs., LLC v. Williamson*,
   2016 U.S. Dist. LEXIS 32350, at *9 (N.D. Ill. March 10, 2016) ............................................ 10

*Robinson v. Morgan Stanley*,
   2007 U.S. Dist. LEXIS 70604 (N.D. Ill. Sept. 24, 2007) ....................................................... 15

*Stericycle, Inc. v. Simon*,
   2017 U.S. Dist. LEXIS 173632, at *12 (N.D. Ill. Oct. 20, 2017) ............................................. 9

*Terrell v. Kane County*,
   2013 U.S. Dist. LEXIS 77435, at *3 (N.D. Ill. May 31, 2013) .................................................. 5

*Traffic Tech, Inc. v. Kreiter*,
   2015 U.S. Dist. LEXIS 169248 at *14 (N.D. Ill. Dec. 18, 2015) ............................................ 10

*Zenith Elecs. Corp. v. Exzec, Inc.*,
   1997 U.S. Dist. LEXIS 20762 (N.D. Ill. Dec. 24,1997)................................................................17

## I.    INTRODUCTION

Morgan Stanley Smith Barney LLC (for ease of reference and unless otherwise noted, "Morgan Stanley") respectfully submits this memorandum of law in opposition to Defendants' motion to dismiss. Defendants' motion is entirely without merit.

Indeed, one of Defendants' central legal arguments, *i.e.* that their non-solicitation covenants lack adequate consideration because they were signed less than two years before their resignations, has been rejected by *at least six judges in this Court*. Equally important, as the Court held in *Allied Waste Servs. of N.Am., LLC v. Tibble*, 177 F. Supp.3d 1103, 1109 (N.D. Ill. 2016), the amount of time an employee must remain employed after signing a non-solicitation covenant rests on "yet-to-explored facts, and is therefore not appropriate for determination at this [motion to dismiss] stage in the proceedings." *See also Apex Physical Therapy, LLC v. Ball*, 2017 U.S. Dist. LEXIS 115859, at *7 (S.D. Ill. July 24, 2017) (motion to dismiss denied; "substantial consideration is an issue of fact that is undeveloped at the pleading stage"). In any event, all six Defendants signed non-solicitation covenants *more* than two years prior to their resignations from Morgan Stanley. (Amended Complaint, Exhibits "C" and "I").[1]

Defendants' remaining legal challenges to the Amended Complaint are equally without merit. In fact, Defendants' motion is largely an effort on their part to evade accountability for statements contained in their Declarations, made under penalty of perjury, which have proven to be *patently false*. Defendants' conduct cannot be condoned, and the motion to dismiss should be denied in its entirety.

---

[1] As for Defendants' claim that their continued employment was not conditioned on their execution of the non-solicitation covenants, *see* Defendants' MOL at 7-8, the Amended Complaint (at ¶¶ 36-43) makes clear they received additional valuable consideration as well. The sufficiency of this additional consideration clearly is a factual issue as well.

## II.  **LEGAL DISCUSSION**

A party "must meet a high standard to have a complaint dismissed because in ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts must be taken as true." *See Benjamin v. Marshal P. Morris Profit Sharing Plan & Trust*, 1998 U.S. Dist. LEXIS 8358, at *5 (N.D. Ill. May 19, 1998). "Dismissal is improper 'unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at *6 (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "A determination of the sufficiency of a claim must be made 'on the assumption that all allegations in the complaint are true (even if doubtful in fact).'" *See Guzman v. Target Corp.*, 2018 U.S. Dist. LEXIS 193563, at *3 (N.D. Ill. November 14, 2018) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Defendants come nowhere close to satisfying this high standard.

### A.  **The Court Does Not Have Jurisdiction to Grant Defendants' Motion**

It is vital to note at the outset that the Court does not have jurisdiction to grant the relief sought in Defendants' motion.  Morgan Stanley merely seeks "a temporary restraining order and/or preliminary injunctive relief pending the outcome of arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration Procedure." (Amended Complaint at 13).  Yet, Defendants' motion seeks dismissal of "each of the claims asserted by MSSB *with prejudice*…" (Defendants' MOL at 1, 17) (emphasis in the original).

FINRA Rule 13200 makes clear that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among…Members and Associated Persons."  FINRA Rule 13804 simultaneously allows a party to seek a preliminary injunction "from a court of competent jurisdiction" – the

relief Morgan Stanley seeks herein.

In regards to Morgan Stanley's entitlement to injunctive relief pending the FINRA arbitration, all six Defendants averred in paragraph 7 of their signed Declarations, under penalty of perjury, as follows: "I can state unequivocally that I did not take or retain any MSSB information *or client information*." (emphasis added). Each Defendant proceeded to state in paragraph 8 that "I do not have any MSSB information *or client information in my possession, custody, or control*." (emphasis added). In denying the TRO, the Court observed that "Birkey avers that he did not take or retain any Morgan Stanley information or client information…. Bruner makes identical averments. Thomas does the same." (*See* 9/26/18 TR. at 25, lines 19-24). Significantly, the Court proceeded to hold: "I do want to say that should Morgan Stanley obtain more definite proof of solicitations or the theft of its information before the arbitration hearing, it is welcome to come back and renew its motion for a temporary restraining order." (*Id.* at 27, lines 18-22).

Since the time Defendants submitted their Declarations, Morgan Stanley has learned that they all *did in fact retain client contact information in their cell phones.* Backtracking from their sworn Declarations, in response to interrogatory 4 seeking the identity of all Morgan Stanley clients for whom they retained contact information, all six Defendants now only state that they "did not retain any Morgan Stanley *document(s).*" (Exhibit "A") (emphasis added).2

Even more troubling, after initially claiming in their verified response to interrogatory 5 that they contacted Morgan Stanley clients through "memory, the White Pages, and other public sources, such as the Internet," *see* Exhibit "A" hereto, four of the six

---

2 Discovery also has revealed that Defendants acted contrary to the instructions of their new employer, Stifel. (Exhibit "B" at bullet points 1-4; to be filed under seal).

Defendants, Birkey, Bruner, and Schimmelpfennig, amended their responses to admit they used *"certain information that was on his phone"* to contact Morgan Stanley clients following their resignations. (Exhibit "C" hereto).

Hendrix amended his verified interrogatory response to state that he used "information that temporary employees were able to obtain, *presumably* from the internet." (Exhibit "D" hereto) (emphasis added). Thomas likewise amended his response to admit he used a computer generated list dated September 15, 2018 - only two days after his resignation from Morgan Stanley - *containing the names, addresses and birthdays of 347 Morgan Stanley clients*. (Exhibit "E" hereto; referencing documents numbered DEF 000569 – DEF 000574). It would be impossible for Thomas to generate this extensive list by memory in just two days. (Exhibit "F" hereto; to be filed under seal). Thomas also has no plausible explanation as to how he obtained the birthdays of nearly 350 Morgan Stanley clients from "public" sources.

In short, Defendants' motion that the Court dismiss all of Morgan Stanley's claims with prejudice is wholly improper and invades the province of the FINRA arbitration panel. The Court's jurisdiction is limited to whether a TRO/preliminary injunction is appropriate pending FINRA arbitration which, Morgan Stanley submits, clearly is the case.

### B. Morgan Stanley Has Complied with Fed. R. Civ .P. 8(a)(2)

Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Morgan Stanley has fully complied with Rule 8(a)(2), and Defendants' motion to dismiss on this ground is baseless.

The sole case upon which Defendants rely, *Georgakis v. Illinois State Univ.*, 722 F.3d 1075 (7th Cir. 2013), makes no mention whatsoever of Rule 8(a)(2). Moreover, in *Georgakis*, the plaintiff sought "no relief" against one of the defendants and failed to allege that

4

any of the defendants harmed him. *Id.* at 1076-1077. In this case, Morgan Stanley seeks relief against all six Defendants. (Amended Complaint, ¶¶ 46, 48-62, "wherefore" clause at 13). Morgan Stanley also has expressly alleged that all six Defendants caused harm to Morgan Stanley. (*Id.* at ¶¶ 50, 57, 62).

Even where a complaint is dismissed under Fed. R. Civ. P. 8(a)(2), courts invariably do so *without prejudice. See, e.g., Davis v. Bank of Am. Corp.*, 2017 U.S. Dist. LEXIS 19740, at *9 (N.D. Ill. Feb. 13, 2017) (allowing plaintiffs to submit a third amended complaint); *Terrell v. Kane County*, 2013 U.S. Dist. LEXIS 77435, at *3 (N.D. Ill. May 31, 2013) (allowing plaintiff to submit a second amended complaint). Here, Morgan Stanley clearly has complied with Fed. R. Civ. P. 8(a)(2), and Defendants' motion to dismiss on this ground, especially with prejudice, is without merit.

### C. Morgan Stanley's Claims are Facially Plausible

Defendants' next argument, *i.e.*, that Morgan Stanley's claims are not "facially plausible," is equally groundless. According to Defendants, "MSSB: (a) failed to plead that any of the Defendants solicited a 'Client Account,' retained or took any MSSB information, interfered with any customer relationship, or any other breach or wrong, relying on the general description 'Defendants.'" (Defendants' MOL at 5).

To the contrary, in paragraph 5 of the Amended Complaint, Morgan Stanley specifically alleged that Defendant Bruner solicited one of its clients. Paragraph 6 alleges that Defendants "have initiated numerous other telephone calls to, and/or have been personally meeting with, Morgan Stanley clients" and that another client was asked to transfer to Stifel and has done so. Another client, as set forth in paragraph 7 of the Amended Complaint, received a package from one or all of the Defendants.

5

In the interest of client privacy, Morgan Stanley did not name the aforementioned clients in the Amended Complaint. The Amended Complaint, however, makes clear that Morgan Stanley identified them for Defendants' counsel by email. (Amended Complaint at ¶ 7, n.1). Morgan Stanley also provided Defendants' counsel with an unredacted list of the "Client Accounts" encompassed by Defendants' Joint Production Memorandum Agreements ("JPM") and Joint Production Arrangement Policies ("JPA"). All three clients referred to in paragraphs 5-7 of the Amended Complaint are listed as "Client Accounts" and, hence, are subject to Defendants' non-solicitation covenants. Defendants' motion also ignores paragraph 9 of the Amended Complaint relating to Defendants' use of social media, such as Facebook, to reach out to Morgan Stanley clients. The Court previously opined that "[t]his is not a good idea – not a good idea – at all." (*See* 9/26/18 TR. at 24, lines 16-17).

As for Defendants' contention that Morgan Stanley "failed to plead" that any of them "retained or took any MSSB information," the Amended Complaint alleges that files pertaining to a large institutional client cannot be located, and "there appears to be very little or no information contained within the files of the larger clients serviced by Defendants." (Amended Complaint, ¶ 11). In its Amended Complaint, and consistent with the discovery received to date, Morgan Stanley further alleged that Defendants "retained information pertaining to Morgan Stanley clients, including client files and *contact information* and possibly other sensitive client information." (Amended Compliant, ¶ 11) (emphasis added). In fact, since filing its Amended Complaint, Morgan Stanley has discovered that (i) contrary to their Declarations, all six Defendants retained client information; and (ii) contrary to their verified interrogatory responses, at least five Defendants used this information to contact clients.

6

Defendants also ignore paragraphs 12-13 of the Amended Complaint, in which Morgan Stanley alleges that Defendant Thomas sent emails containing highly confidential performance reports to two large institutional clients on the day he resigned. Whether Thomas sent these emails to "further the interests of Morgan Stanley" or in anticipation of his move to a competitor, clearly is not an issue ripe for resolution at this early stage of the proceeding.

Nor is it true that Morgan Stanley "failed to plead…the breach of any contract, breach of fiduciary duty, or the breach of any unfair competition rule," or "to plead any damage or injury as a result of any purported wrongful conduct." (Defendants' MOL at 5). The contracts Defendants breached are exhibits to the Amended Complaint. Morgan Stanley alleged very specific breaches of the duty of loyalty by Birkey and Thomas, further alleged that the retention of client information would constitute a breach of the duty of loyalty by all Defendants, and alleged unfair competition by all Defendants. (Amended Complaint at ¶¶ 51-62).

In *Cornerstone Assurance Grp., Inc. v. Harrison*, 2017 U.S. Dist. LEXIS 165735 (N.D. Ill. Oct. 5, 2017), the Court rejected the identical argument that the complaint was not "facially plausible." As the Court held: "To meet this plausibility standard, the complaint must supply 'enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.* at *4 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Discovery in this case *already* has revealed evidence supporting Morgan Stanley's allegations. The Court also refused to dismiss the complaint despite its "failure to name a specific client in connection with the alleged wrongful disclosure." *Id.* at *5. In this case, while Morgan Stanley did not name clients in the Amended Complaint for privacy reasons, their identities have been provided to Defendants' counsel. In *Cornerstone*, the Court concluded:

7

"Plaintiff has provided more than enough information to put Defendant on notice of the claims against which she must defend." *Id.* at *6. Precisely the same is true here.

Lastly, even if dismissal were appropriate, which it clearly is not, Defendants' attempt to obtain dismissal of all of Morgan Stanley's claims with prejudice is specious. In short, Morgan Stanley's claims are "facially plausible" and Morgan Stanley has "provided more than enough information to put Defendants on notice of the claims against them."

### D. Morgan Stanley is a Party to the JPMs and JPAs

In a single paragraph, Defendants contend that Morgan Stanley is a non-party to the JPMs and JPAs and "lacks standing" to enforce them. (Defendants' MOL at 6). Morgan Stanley unquestionably is a party to these agreements. The introductory paragraph of the JPM explicitly provides it can be "modified by the Firm [Morgan Stanley]." (Amended Complaint, ¶ 23). Certification of all information contained in the JPA is required "bi-annually or more often at Morgan Stanley's discretion," and Morgan Stanley has a wide array of rights under the agreements including the ability to obtain injunctive relief and attorneys' fees and costs. (*Id.,* ¶¶ 24, 25-27). And, of course, *Morgan Stanley is a signatory* to the JPMs (Amended Complaint, Exhibits "B", "H"-"J"), which incorporate the JPAs. Defendants' claim that Morgan Stanley is not a party to, and lacks standing to enforce, the agreements is specious.

### E. The Agreements Do Not Fail for Lack of Mutuality

Defendants' lack of mutuality argument fails as well. The only case cited by Defendants, *Hillman v. Hodag Chem. Corp.*, 96 Ill. App.2d 204 (1st Dist. 1968), rejected this very argument and noted, "mutuality of obligation may be implied as well as expressed in the agreement of the parties." *Id.* at 207. In this case, at a minimum, there was an implied obligation on the part of Morgan Stanley to compensate Defendants for any business they

8

conducted under the JPMs/JPAs.  More recent case law also makes clear that mutuality is not even necessary where, as here, adequate consideration exists.3  Defendants' lack of mutuality argument is without merit.

## F.  **The Agreements Do Not Fail for Lack of Consideration**

Defendants' lack of consideration argument also is without merit.  Defendants rely on several state court decisions, including *Fifield v. Premier Dealer Servs.*, 2013 IL App (1st) 120327.  (Defendants' MOL at 7).  Numerous subsequent decisions by this Court, however, have refused to follow *Fifield* or these other state court decisions.  That is particularly true in cases such as this in which the employee resigns voluntarily.

In *Stericycle, Inc. v. Simon*, 2017 U.S. Dist. LEXIS 173632, at *12 (N.D. Ill. Oct. 20, 2017), the Court refused to follow *Fifield*, noting that it "fails to explain why an employee's resignation is irrelevant to the issue of adequacy [of consideration]."  As the Court held: "Indeed, the two-year rule does not logically follow from the rationale underlying the substantial period requirement.  As discussed above, courts require a substantial period of continued employment to prevent an employer from locking an at-will employee into a restrictive covenant and then immediately terminating that employment." *Id.* at *13.  The Court proceeded to emphasize: "More importantly, a two-year minimum effectively turns the purpose of substantial period requirement 'on its head.'  While the rule protects employees from the whim of its employers, it puts employers at the mercy of their employees: the 'employee can void the consideration for any restrictive covenant by simply quitting for any reason.'" *Id.* at *14.

The Court in *Airgas United States, LLC v. Adams*, 2016 U.S. Dist. LEXIS 82869,

---

3 *See Frerichs v. Credential Services, et al.*, 1999 U.S. Dist. LEXIS 22811, at *20 (N.D. Ill. Sept. 30, 1999) ("modern contract law largely has dispensed with the requirement of reciprocal promises provided that a contract is supported by sufficient consideration"); *Design Benefit Plans, Inc. v. Enright*, 940 F. Supp. 200, 205 (N.D. Ill. 1996) ("if the requirement of consideration has been met, mutuality of obligation is not essential").

at *7 (N.D. Ill. June 27, 2016), noted that, while *Fifield* "applied a bright-line test requiring at least two years of continued employment for the continued employment to be considered adequate consideration, the Illinois Supreme Court holds that the validity of a noncompetition agreement depends 'on the totality of the facts and circumstances of the individual case.'" (citation omitted). "Accordingly, the court rejects the two-year bright-line rule." *Id.*

In *Traffic Tech, Inc. v. Kreiter,* 2015 U.S. Dist. LEXIS 169248 at *14 (N.D. Ill. Dec. 18, 2015), the Court noted that, while defendant left only nine months after signing his non-solicitation covenant, "he received a $250,000 signing bonus (equal to one year's salary)" from his new firm. Here, all six Defendants likewise received very sizable upfront payments from Stifel. (Amended Complaint, ¶ 8).4

Significantly, as noted at the outset, Defendants signed JPMs/JPAs containing non-solicitation covenants *more* than two years before resigning and, in return, received valuable consideration. (Amended Complaint at ¶¶ 36-43). Equally important, virtually every judge to decide the issue in this Court has rejected the identical consideration argument being advanced by Defendants.

### G. The Confidentiality Covenants are Enforceable

Defendants' claim that their confidentiality covenants are unenforceable also fails. In connection with the JPA, the two cases Defendants cite are clearly distinguishable, as the

---

4 *See also Avison Young-Chicago, LLC v. Puritz,* 2017 U.S. Dist. LEXIS 196189 at *16 (N.D. Ill. Nov. 29, 2017) ("Defendants' employment for approximately 17 months and their subsequent voluntary resignation...sufficiently plead a 'substantial period' of employment to survive Defendants' motion for judgment on the pleadings."); *R.J. O'Brien & Assocs., LLC v. Williamson,* 2016 U.S. Dist. LEXIS 32350, at *9 (N.D. Ill. March 10, 2016) (Court found one year of employment following the execution of a non-solicitation covenant to be sufficient consideration); *Montel Aetnastak, Inc. v. Miessen,* 998 F. Supp.2d 694, 715 (N.D. Ill. 2014) (15 months of continued employment and voluntary resignation were sufficient to constitute a "substantial period" of employment); *LKQ Corp. v. Thrasher,* 785 F. Supp.2d 737, 743 (N.D. Ill. 2011) (finding that one-year period after signing the covenant was adequate consideration and noting that "[r]ather than being terminated, it was Thrasher who ended his employment relationship with LKQ.").

10

provisions in those cases were far broader. In *AssuredPartners, Inc. v. Schmitt*, 2015 Il. App. (1st) 141863, para. 16 (2015), the provision pertained not merely to "client" information, but to all "information. . . obtained by Executive during the course of Executive's employment with Employer *concerning the business or affairs of the Company. . . .*" (emphasis added).

Defendants' reliance on *AssuredPartners* is even more unavailing at this stage. In *Avison Young-Chicago, supra,* 2017 U.S. Dist. LEXIS 196189, at *19, the Court held: "Whether the confidentiality provision prevents Defendants from using any information they learned while working for Plaintiff, and whether every category of prohibited information contained in the provision is necessary for Plaintiff to protect its confidential information, is a factual dispute that this Court cannot resolve on a motion for judgment on the pleadings."

The same type of broad confidentiality provision as in *AssuredPartners* was at issue in *Carlson Group, Inc. v. Davenport*, 2016 U.S. Dist. LEXIS 171915, at *8 (N.D. Ill. December 13, 2016), where the court struck down a similar provision defining confidential information as "*information of or concerning the business of Company. . . .*" (emphasis added). In *Carlson Group*, the court further found unenforceable the provision prohibiting employees from "using, disclosing, or relying" upon Confidential Information "at any time during the term of this Agreement or thereafter." *Id.* at *13.

Unlike in *Carlson Group*, the lack of a time or geographic restriction here is irrelevant because the JPA only prohibits Defendants from retaining client information when they leave. The confidentiality covenant in no way prohibits the future use of client information to the extent Defendants obtain it from publicly available sources after they resign. *See also Abbot-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 17-18 (Ill. App. 1993) ("Courts have upheld restrictions which lack geographic limitations where the purpose of these restrictions was

11

to protect the employer from losing customers to a former employee. . . ."); *Archer Daniels Midland Co. v. Whitacre*, 60 F. Supp. 2d 819, 826 (C.D. Ill. 1999) ("[T]he lack of a time limitation does not automatically mean a non-disclosure agreement is void and unenforceable.").

In similarly contesting the enforceability of the confidentiality covenants in the FA Agreements signed by Ouwenga/Hendrix, Defendants rely on two cases, *Cincinnati Tool Steel Co. v. Breed*, 136 Ill. App.3d 267 (2d Dist. 1985), and *N. Am. Paper Co. v. Unterberger*, 172 Ill. App.3d 410 (1st Dist. 1988). In a later decision, however, *Coady v. Harpo, Inc.*, 308 Ill. App.3d 153, 161 (1st Dist. 1999), the court held that "a confidentiality covenant will not be deemed unenforceable for a lack of durational or geographic limitations where trade secrets and confidential information are involved."5

That unquestionably is the case here both with respect to the JPMs/JPAs and the FA Agreements. Illinois courts consistently have held that client information of financial services firms such as Morgan Stanley is trade secret and enforced confidentiality covenants containing no geographic or time limitations. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Patinkin*, 1991 U.S. Dist. LEXIS 6210, at *2 (N.D. Ill. May 9, 1991) (upholding Merrill Lynch's confidentiality covenant containing no geographic or time restriction)*; see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Salvano*, 999 F.2d 211 (7th Cir. 1993); *Merrill Lynch v. Cross*, 1998 U.S. Dist. LEXIS 3188 (N.D. Ill. 1998). Accordingly, Defendants' challenges to their various confidentiality covenants are groundless.

### H.  The Non-Solicitation Covenants are Enforceable

Defendants' contention that their non-solicitation covenants are unenforceable

---

5 *See also Eichmann v. National Hosp. & Health Care Services*, 308 Ill. App. 3d 337, 345 (1st Dist.1999) ("Covenants containing no geographic limitation have been upheld as reasonable where the purpose of the restriction was to protect the employer from losing customers to a former employee who, by virtue of his employment, gained special knowledge and familiarity with the customers' requirements.").

also fails. Defendants' primary challenge to the covenants in the JPAs is that they "extend non-solicitation protection to MSSB's affiliated businesses involving products and services that were not sold or provided by MSSB..." (Defendants' MOL at 10). This is a gross misconstruction of the JPA. In reality, although the agreements incorporate any other agreements Defendants signed with an affiliated business, the non-solicitation covenants themselves apply only to the clients Defendants *serviced* at Morgan Stanley and who are specifically identified on a list of "Client Accounts." Such restrictions are routinely enforced, *see*, *e.g.*, *Cross*, *supra*. Furthermore, in the sole case upon which Defendants rely in support of this argument, *PCM Sales, Inc. v. Reed*, 2017 U.S. Dist. LEXIS 159687 (N.D. Ill. Sept. 28, 2017), the Court held: "Reed is incorrect, however, in arguing that the overbroad definition of PCM renders the non-solicitation and non-competition clauses of his employment agreement invalid." *Id.* at *21. Noting that courts routinely reform covenants, the Court held: "Reforming the definition of PCM in the employment agreement's restrictive covenants to include only PCM Sales is equitable under the facts of this case." *Id.*

Defendants' reliance on *Disher v. Fulgoni*, 124 Ill. App.3d 257 (1st Dist. 1984), is equally unpersuasive. (Defendants' MOL at 10). While Defendants claim their non-solicitation covenants are "intended to prevent any competition" with Morgan Stanley, in truth, they only prevent solicitation of clients and the misappropriation of confidential client information. Unlike in *Disher*, Defendants are free to work at Stifel.

Lastly, Defendants' claim that "there is no allegation that the unnamed allegedly solicited customers" are "Client Accounts" encompassed by their non-solicitation covenants, *see* Defendants' MOL at 10, is simply wrong. Morgan Stanley provided an unredacted list of all "Client Accounts" to Defendants' counsel and specifically identified the clients solicited by

13

Defendants in an email to their counsel. All are "Client Accounts."

Defendants' challenge to the non-solicitation covenant in the FA Agreement likewise is based on a fundamental misreading of the covenant. According to Defendants, it encompasses "past and future customers of MSSB and its affiliates…" (Defendants' MOL at 12). Although the non-solicitation covenant may "run to the successors, affiliates and assigns of Morgan Stanley," it is limited in scope only to the clients serviced by Ouwenga/Hendrix or whose names became known to them during their employment at Morgan Stanley. Under Illinois law, such a limited restriction is lawful. *See, e.g., Merrill Lynch v. Cross*, *supra*, 1998 U.S. Dist. LEXIS 3188, at \*8 (enjoining solicitation of clients serviced by Defendant or whose name became known to him during his employment at former firm); *IDS Financial Services, Inc. v. Smithson,* 843 F. Supp. 415, 419-420 (N.D. Ill. 1994) (granting preliminary injunction as to clients serviced by former employer and holding that the issue pertaining to clients whose names became known to former employee "remains contestable at trial").

*Lawrence v. Allen, Inc. v. Cambridge Human Res. Grp., Inc*, 292 Ill. App.3d 131 (2d Dist. 1997), is easily distinguishable. In that case, the non-solicitation covenant did not define what clients were encompassed within it. *Id.* at 139. Here, the FA Agreement limits the clients covered by the non-solicitation covenant only to those serviced by Ouwenga/Hendrix or whose names became known to them at Morgan Stanley. *Eichmann, supra*, 308 Ill. App. 3d at 340, is also distinguishable in that the covenant in that case, unlike here, prohibited the *servicing* of clients and also applied to *every* "existing or future customer" of plaintiff's former firm.

Defendants' reliance on *AssuredPartners, supra*, and *Cambridge Eng'g., Inc. v. Mercury Partners 90 BI, Inc.,* 378 Ill App.3d 437 (1st Dist. 1997), is wholly misplaced as well. In both cases, the non-solicitation covenants, unlike here, extended to clients of affiliated entities

14

and/or past or future clients of the employer. *Assured Partners, supra*, at paras. 39-40; *Cambridge Eng'g., Inc., supra,* 378 Ill App.3d at 455. Finally, even assuming, *arguendo*, that the non-solicitation covenant in the FA Agreement was overbroad, as the court noted in *PCM Sales, Inc.*, *supra*, 2017 U.S. Dist. LEXIS 159687, whether to reform the covenant is a factually-based inquiry not appropriate at the motion to dismiss stage.

## I.     The Code of Conduct is Enforceable

In arguing that the Code of Conduct creates no contractual obligations, Defendants cite *Robinson v. Morgan Stanley,* 2007 U.S. Dist. LEXIS 70604 (N.D. Ill. Sept. 24, 2007). (Defendants' MOL at 14). In particular, Defendants point to the language that a "clear and forthright disclaimer is a complete defense to a suit for breach of contract…" (*Id.*). In *Robinson*, however, the plaintiff was relying on Morgan Stanley's Employee Handbook - not its Code of Conduct - to invalidate her termination.

The Code of Conduct at issue here makes crystal clear that "[t]his Code forms part of the terms and conditions of your employment and governs your activities at Morgan Stanley. It also covers certain obligations that continue if you leave Morgan Stanley. You are responsible for following this Code and all policies and procedures that apply to you." (Amended Complaint, ¶¶ 31-32). Unlike in *Robinson*, Defendants also electronically signed the Code of Conduct. (*Id.* at ¶ 33). This case bears no resemblance to *Robinson*.

Defendants' other attacks on the Code of Conduct, including that it fails "for lack of mutuality" and "for want of consideration as Defendants did not work for two years following adoption of the 2018 Code of Conduct," *see* Defendants' MOL at 14, all have been thoroughly disposed of above. Defendants' motion to dismiss Morgan Stanley's breach of contract claim, to the extent it arises from their violations of the Code of Conduct, is without merit.

15

**J.      Morgan Stanley Adequately Alleges a Duty of Loyalty Claim**

Morgan Stanley also has adequately alleged a breach of the duty of loyalty claim. Defendants claim that *Veco Corp. v. Babcock*, 243 Ill. App.3d 153 (1st Dist. 1993), "debunks MSSB's claim with respect to Birkey, a person alleged to have been an employee not a corporate officer." (Defendants' MOL at 15). The Amended Complaint (at ¶ 4), however, alleges that "Defendant Birkey was the manager of Morgan Stanley's Bourbonnais office." In its "Breach of The Duty of Loyalty Count," Morgan Stanley reiterates that Birkey was "Morgan Stanley's Branch Manager." (*Id.* at ¶ 56).

The Amended Complaint further alleges (at ¶ 55), that "[a]ny removal, prior to resigning, by Defendants of any information relating to Morgan Stanley's clients would constitute a further violation of their duty of loyalty." All Defendants admit retaining Morgan Stanley client information, and at least four (and perhaps all six) Defendants actually used this Morgan Stanley client information to contact Morgan Stanley clients. As the court noted in *Veco*, while employees "may plan, form, and outfit a competing corporation while still working for the employer," they "may not commence competition." *Veco, supra*, 243 Ill. App.3d at 160. Competition includes "*the improper taking of a customer list.*" *Id.* (emphasis added).

Equally baseless is Defendants' claim that "[w]ith respect to Brian Thomas' alleged conduct, MSSB does not come close to explaining how sending a client its own account performance information could be contrary to MSSB's interests." (Defendants' MOL at 15). Morgan Stanley can conceive of no legitimate reason for Thomas to have sent emails to two large institutional clients containing confidential Morgan Stanley performance reports immediately before (or perhaps even after) resigning. (Amended Complaint, ¶ 12). In any event, Thomas' motivation for doing so is a factual issue, precluding dismissal of the breach of

the duty of loyalty claim against him.

### K. Morgan Stanley Adequately Alleges an Unfair Competition Claim

Defendants' very cursory attempt to obtain dismissal of Morgan Stanley's unfair competition claim is groundless. Contrary to Defendants' motion to dismiss (Defendants' MOL at 16), Morgan Stanley specifically alleges in its Amended Complaint (at ¶¶ 58-61) every one of the necessary elements for an unfair competition claim. In the primary case relied upon by Defendants, *Zenith Elecs. Corp. v. Exzec, Inc.*, 1997 U.S. Dist. LEXIS 20762 (N.D. Ill. Dec. 24, 1997), the Court *denied* a motion to dismiss an unfair competition where, as here, all of the elements were pled. As for Defendants' claim that "there is no allegation that the customer at issue was a 'Client Account,'" Defendants' MOL at 17, Morgan Stanley provided Defendants with an unredacted listing of all "Client Accounts" encompassed by their JPMs/JPAs and all clients identified as having been solicited by Defendants appear on the list.

### L. Subject Matter Jurisdiction Exists Over this Dispute

Defendants' final claim is that Morgan Stanley did not fully identify whether any LLC members "are themselves limited liability companies, which would further require further allegations of citizenship of these members in order to demonstrate subject matter jurisdiction." (Defendants' MOL at 17). In its Amended Complaint, Plaintiff Morgan Stanley Smith Barney LLC ("MSSB") alleged that neither it nor any of its members have any connection to Illinois, where all Defendants reside. (Amended Complaint, ¶ 19). The sole member of MSSB is Morgan Stanley Domestic Holdings, Inc. ("MSDHI"), a corporation wholly-owned by Morgan Stanley Capital Management, LLC ("MSCM"), a limited liability company whose sole member is parent Morgan Stanley. (*See* Secretary's Certificate; Exhibit "G"). This corporate structure is

17

properly reflected in MSSB's 7.1 Rule Disclosure previously filed with the Court.6  MSDHI,

MSCM, plaintiff MSSB and parent Morgan Stanley all are incorporated in Delaware and have

their principal places of business at 1585 Broadway, New York, New York 10036.  (Exhibit

"H").  Subject matter jurisdiction clearly exists.

## CONCLUSION

For all of the foregoing reasons, Morgan Stanley respectfully requests that

Defendants' motion to dismiss be denied.

Respectfully submitted.

/s/Jerry M. Santangelo
Jerry M. Santangelo
(ARDC#6187833)
SPERLING & SLATER
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel:  (312) 641-3200
Fax:  (312) 641-6492
jsantangelo@sperling-law.com

and

/s/ Thomas J. Momjian
Christopher C. Coss
Thomas J. Momjian
COSS & MOMJIAN, LLP
111 Presidential Blvd., Suite 214
Bala Cynwyd, PA  19004
Tel:  (610) 667-6800
Fax:  (610) 667-6620
ccc@cossmomjian.com
tjm@cossmomjian.com

Dated:  November 28, 2018

---

6 Reference to "Morgan Stanley Smith Barney Holdings LLC" at para. 19 of the Amended Complaint as MSSB's sole member is an inadvertent mistake and can be formally corrected upon the Court's direction.

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing Plaintiff's

Opposition to Defendants' Motion to Dismiss to be served this 28th day of November, 2018, via

the ECF system, to Defendants' counsel.

Thomas J. Momjian