**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HUB GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-2871 |
| | ) | |
| v. | ) | Hon. Rebecca R. Pallmeyer |
| | ) | |
| STEVE ROSE, | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

**MOTION TO COMPEL COMPLIANCE BY PLAINTIFF WITH CONSENT DECREE**
**AND FOR ATTORNEYS' FEES**

Defendant, Steve Rose ("Defendant" or "Mr. Rose"), by and through his attorneys, Gary

I. Blackman and Jason B. Hirsh of Levenfeld Pearlstein, LLC, file this Motion to Compel

Compliance by Plaintiff with Consent Decree and for Attorneys' Fees.

1.      On October 16, 2018, the parties settled this matter pursuant to a Consent Decree

(Dkt. #64) that provided, in relevant part, as follows:

> Each Party bears its own attorney's fees and costs. However, Rose remains
> obligated to pay ten thousand dollars $10,000 to Protek International, Inc.
> ("Protek"), his share of Protek's costs under the Forensic Protocol. (Dkt. No. 29).

> Rose shall: (a) return or destroy all Hub Confidential Information in his
> possession; and (b) direct Protek to destroy all information/devices in its
> possession that were provided to it by Rose.

See, *Consent Decree*, attached as **Exhibit 1**.

2.      Mr. Rose has repeatedly requested that Plaintiff and Protek comply with the

Consent Decree, and delete/wipe the agreed to information given to them by Mr. Rose many

months ago, and return to him, after wiping, his wife's laptop (that Protek has had since October

29, 2018), however, Protek will not move forward because Plaintiff has taken the position that it

is not Plaintiff's responsibility to pay Protek to do the work – despite an Agreed Protocol Order

that <u>specifically</u> states otherwise.

3.  Para. 13 of the Agreed Protocol Order (Dkt. #29) states as follows:

Defendant and Plaintiff shall each be equally (50% / 50%) responsible for the Forensic Neutral's work set forth herein. **However, 100% of the cost/expense of any deletion/wiping of the Electronic Sources and/or Electronic Accounts, as detailed in Paragraph 11 herein, shall be borne by Plaintiff.** Additionally, Defendant's total obligation under this Order shall be capped at $10,000, exclusive of any messenger fees incurred for expedited delivery of the iPhone and/or Lenovo Laptop. (Emphasis added).

See, *Agreed Protocol Order*, attached as **Exhibit 2**.

4.  Defendant paid Protek his required share of $10,000 on November 2, 2018.

5.  On December 27, 2018, Defendant again emailed Plaintiff asking that he comply:

Hey Tom. There have been no deletions because Protek is waiting for confirmation of who will pay. They estimate the costs to be about 7k to wipe and delete Steve's devices. **Para 13 of the Agreed Protocol Order (Dkt. 29) says Hub pays all deletion and wiping fees** and Rose is capped at 10k for the case ("*However, 100% of the cost/expense of any deletion/wiping of the Electronic Sources and/or Electronic Accounts, as detailed in Paragraph 11 herein, shall be borne by Plaintiff.*").

We have already paid 10k. Para 2 of the Consent Decree confirm our cap at 10k: ("*Each Party bears its own attorney's fees and costs. **However, Rose remains obligated to pay ten thousand dollars $10,000 to Protek International, Inc. ("Protek"), his share of Protek's costs under the Forensic Protocol. (Dkt. No. 29)**"*

We have been ready willing and able to comply with the Consent Decree but Hub needs to confirm with Protek that it will be paying the bill. What am I missing?

Gary (Emphasis added).

See, *December 27, 2018 Email*, attached as **Exhibit 3**.

6.  Plaintiff, without citation, has taken the bad faith position that the deletion/wiping

costs are the responsibility of Mr. Rose, notwithstanding the Agreed Protocol Order.

7.     Plaintiff's punitive conduct continues to cost Mr. Rose attorneys' fees, even after the parties settled. As such, Defendant is requesting that it be reimbursed for all post-Consent Decree costs incurred by Defendant in his attempts to obtain Plaintiff's compliance on this issue, including the fees for having to bring this Motion to Compel.

WHEREFORE, Defendant, Steve Rose, respectfully requests that this Court grant his Motion to Compel Compliance with Consent Decree and for Attorneys' Fees and such other relief as this Court deems appropriate.

Dated: December 28, 2018                    Respectfully submitted,

**Defendant, STEVE ROSE**


By: */s/ Gary I. Blackman*
       One of His Attorneys

Gary I. Blackman (ARDC #6187914)
Jason B. Hirsh (ARDC #6283094)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
Tel.:    (312) 346-8380
Fax:    (312) 346-8434
gblackman@lplegal.com
jhirsh@lplegal.com

## CERTIFICATE OF SERVICE

I, Gary I. Blackman, an attorney, hereby certify that on December 28, 2018, I caused a true and correct copy of the foregoing ***Motion to Compel Compliance with Consent Decree and for Attorneys' Fees*** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties registered with the CM/ECF system.

*/s/ Gary I. Blackman*

# EXHIBIT 1

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

HUB GROUP, INC.,

        Plaintiff,

    v.

STEVE ROSE,

        Defendant.

Case No. 1:18-cv-02871

Judge Rebecca R. Pallmeyer

Magistrate Judge Jeffrey Cole

### CONSENT DECREE

The Court enters this Consent Decree, the terms of which have been agreed upon by Plaintiff, Hub Group, Inc. ("Hub"), and Defendant Steve Rose ("Rose") (collectively the "Parties").

Based on the Parties' agreement as set forth in their motion, and based on this Court's independent review, the Court finds that this Consent Decree is adequate, fair, reasonable, equitable, and just. It is in the interests of both Hub and Rose.

The Court finds, and the Parties admit, that: (a) the Court possesses subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1332 & 1367(a); (b) the Court has personal jurisdiction over Rose; and (c) venue is proper in this Court under 28 U.S.C. § 1391(a).

The terms of this Consent Decree are as follows:

1.    Rose admits that he wrongfully removed and deleted information belonging to Hub that Hub considers to be confidential information or trade secrets that Hub believes would give Rose and his new employer a significant benefit or advantage in, among other things, soliciting business from those customers Rose serviced while employed with Hub. Rose denies

that he is liable on all of the claims filed against him or that Hub has been damaged as a result of his actions.

2. Each Party bears its own attorney's fees and costs. However, Rose remains obligated to pay ten thousand dollars $10,000 to Protek International, Inc. ("Protek"), his share of Protek's costs under the Forensic Protocol. (Dkt. No. 29).

3. For purposes of this Consent Decree, "Hub Confidential Information" is defined as Hub's "technical, commercial or financial information that is not publicly available, including actual and potential customer name and contact lists, customer proposals and/or bids, pricing files and pricing formulae, gross margins, daily and weekly sales manager reports, marketing strategies and intermodal assessment reports." With respect to "actual and potential customer name and contact lists," such information that is publicly available or obtained by Rose independent of information he gained while employed at Hub is not "Hub Confidential Information."

4. Rose shall: (a) return or destroy all Hub Confidential Information in his possession; and (b) direct Protek to destroy all information/devices in its possession that were provided to it by Rose. Within ten (10) calendar days of the entry of this Consent Decree, Rose shall provide Hub an Affidavit confirming that he has done so.

5. Within ten (10) calendar days of the entry of this Consent Decree, Rose shall provide Hub an Affidavit representing that he has not shared or disclosed Hub Confidential Information to Redwood or anyone else.

6. Rose shall not share or disclose Hub Confidential Information to Redwood or anyone else.

2

7.     While employed with Redwood, Rose shall: (a) avoid any discussion of Hub Confidential Information; (b) decline work assignments - without explanation to Redwood - which he reasonably believes may pose a risk of inadvertent or other use or disclosure of Hub Confidential Information; and (c) recuse himself from any meeting or discussion - without explanation to Redwood - which he reasonably believes may pose a risk of inadvertent or other use or disclosure of Hub Confidential Information.

8.     Rose shall not, through January 1, 2019, in his employment with Redwood, with another entity or on his own behalf, directly or indirectly, engage in the marketing or selling of intermodal services.

9.     Rose shall not, through January 1, 2019, communicate with or solicit, directly or indirectly, any then-current Hub employee (or an individual who was a Hub employee during the six (6) months prior to the communication of solicitation) about or for other employment.

10.     Rose waives and releases all known or unknown rights, claims and causes of action he has or may have against Hub arising out of or relating to his employment with Hub, including his separation from employment. The claims Rose is waiving and releasing include, but are not limited to, any and all allegations that Hub:

a.     has discriminated on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), or on the basis of race, color, sex (including sexual harassment), national origin, ancestry, disability (including the Americans With Disabilities Act), religion, sexual orientation, marital status, parental status, veteran status, source of income, entitlement to benefits, health factor, union activities, or any other status protected by local, state or federal laws, constitutions, regulations, ordinances or executive orders; or

b.     has retaliated against Rose in violation of any federal, state or local laws; or

c.     has violated the Fair Labor Standards Act, the Family Medical Leave Act, the Employee Retirement Income Security Act, the Workers Adjustment and Retraining Notification Act, the National Labor Relations Act, the Labor-Management Relations Act, Sarbanes-Oxley, Dodd-Frank, the Uniformed Services Employment and Reemployment Rights Act, the Lily Ledbetter Fair Pay

3

Act of 2009, the Genetic Information Nondiscrimination Act, and all other federal, state or local laws; or

d.     has violated Hub's personnel policies, procedures, handbooks, any covenant of good faith and fair dealing, or any express or implied contract of any kind; or

e.     has violated public policy, statutory or common law, including claims for: personal injury; breach of fiduciary duty; invasion of privacy; retaliatory discharge; negligent hiring, retention or supervision; defamation; fraud; intentional or negligent infliction of emotional distress and/or mental anguish; intentional interference with contract; negligence; whistleblowing; detrimental reliance; loss of consortium to Rose or any member of Rose's family; and/or promissory estoppel; or

f.     is in any way obligated for any reason to pay Rose's salary, compensation, benefits, commissions, bonuses, severance benefits, vacation, paid time off, stock grants, stock options, other stock-related benefits, profit-sharing, damages, expenses, litigation costs (including attorneys' fees), back pay, front pay, disability or welfare or retirement benefits (other than any accrued retirement benefits), compensatory damages, punitive damages, and/or interest.

The Court holds that all requirements for an enforceable waiver and release under the Older Workers Benefits Protection Act have been and are satisfied through this Consent Decree.

11.     Hub (and all its entities and affiliates, subsidiaries, related entities, agents, employees and attorneys) waives and releases all known or unknown rights, claims and causes of action it has or may have against Rose (and his agents and attorneys), arising out of or relating to Rose's employment with Hub, including his separation from employment and the matters underlying the claims in Hub's Complaint.

12.     Redwood Logistics, LLC and Simplified Logistics LLC (and all their entities and affiliates) (collectively "Redwood") waive and release Hub (and all its affiliates, subsidiaries, related entities, agents, employees and attorneys) of all known or unknown rights, claims and causes of action they have or may have against Hub arising out of or relating to Rose's employment with Hub and Redwood, his separation from employment with Hub and the matters underlying the claims in Hub's Complaint. Hub waives and releases Redwood of all known or

4

unknown rights, claims and causes of action it may have against Redwood arising out of or relating to Rose's employment with Hub and Redwood, his separation from employment with Hub and the matters underlying the claims in Hub's Complaint. Counsel for Rose represents that they are authorized to execute this Consent Decree on behalf of Redwood for purposes of this Paragraph 12.

13.     If Rose violates any provision of the Consent Decree, he shall be liable to Hub, among other available remedies and damages, for its attorneys' fees and costs incurred in any violation proceeding.

14.     The Court retains jurisdiction, over this action and the Parties, for the purpose of enforcing the terms of this Consent Decree.

15.     This Consent Decree shall be binding upon and inure to the benefit of the Parties and their successors and assigns.

16.     This Consent Decree is a final judgment under Rule 58 of the Federal Rules of

Civil Procedure.

_____
United States District Judge

_____
Oct. 16 2018

Date

_____
Gary N. Blackman
gblackman@lplegal.com
Peter F. Donati
pdonati@lplegal.com
Erin M. Mayer
emayer@lplegal.com
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380

Attorneys for Defendant Steve Rose
and Attorneys for Redwood Logistics, LLC
and Simplified Logistics LLC

_____
Thomas J. Piskorski
(tpiskorski@seyfarth.com)
Katherine F. Mendez
(kmendez@seyfarth.com)
Danielle A. Vera
(dvera@seyfarth.com)
Seyfarth Shaw LLP
233 S. Wacker Drive
Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Attorneys for Plaintiff Hub Group, Inc.

6

# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUB GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-02871 |
| | ) | |
| STEVE ROSE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**AGREED ORDER**

The parties agree to the following forensic inspection protocol (the "Protocol"):

1.      Within three (3) business days after the entry of this Agreed Order, Defendant shall produce via common carrier, the following items (the "Electronic Sources") to Protek International Inc. ("Forensic Neutral"), 6262 Kingery Highway, Suite 270, Willowbrook, Illinois 60527:

    a.  Lenovo Laptop;

    b.  iPhone;

    c.  The following DVD and USB flash media storage "thumb" drives, commonly
        known or physically identified by the following descriptions:

| | Device "Common" Name or Description |
|---|---|
| 1) | Ativa DVD |
| 2) | Memorex DVD |
| 3) | Hentzen Thumb Drive [silver] |
| 4) | Hub Group Thumb Drive [silver] |
| 5) | Hub Group Thumb Drive [silver and red] |
| 6) | Pinnacle Thumb Drive [black] |
| 7) | Spring Mountain Thumb Drive [silver and black] |

| 8) | "PQI" Thumb Drive [black] |
|---|---|
| 9) | Lexar Thumb Drive [black] |
| 10) | Unyson Logistics Thumb Drive [silver and black] |
| 11) | Silver & Blue Thumb Drive |

2.     Concurrently with the production of the Electronic Sources, Defendant will provide Forensic Neutral the login IDs, passwords, and other information Forensic Neural needs to access the Electronic Sources and the following electronic accounts (the "Electronic Accounts"):

      a.   srose53132@sbcglobal.net;

      b.   srose53132@wi.rr.com;

      c.   srose53132@icloud.com;

      d.   Srose53132@gmail.com;

      e.   steverose@milwaukeelogisticscouncil.org;

      f.   steve@3plrecruiters.com

      g.   iCloud account;

      h.   Google Drive account.

3.     Defendant's iPhone and Lenovo Laptop shall be mirrored by Forensic Neutral immediately and returned to Defendants' counsel by messenger delivery within 24 hours of receipt by Forensic Neutral.

4.     Forensic Neutral shall search only the Electronic Sources and Electronic Accounts identified in Paragraph 1 (a)-(c) and 2(a)-(h) above pursuant to the search terms (the "Search Terms") and other analysis parameters outlined in Paragraph 5 below.  If the parties cannot agree on Search Terms, the issue shall be raised with the Court. The search terms will be designated as "Attorneys' Eyes Only" and will not be shared with the parties.

5.      Assuming the parties reach an agreement with respect to Search Terms, by June 29, 2018, the parties shall deliver the Search Terms to the Forensic Neutral.  Forensic Neutral shall immediately execute the search terms across all Electronic Sources and Electronic Accounts, and share a detailed spreadsheet report of hits to the Search Terms to **both parties**. Such report shall not include the content of files, but shall include:

a.  For both files and email, the Electronic Source or Electronic Account where the search hit was found;

b.  For files, all filesystem dates (created, accessed, last written, last modified, deleted);

c.  For files, the file type;

d.  For files, the logical file size;

e.  For files, the file extension;

f.  For files, the current status of file (deleted but recoverable, overwritten, active, wiped, etc.);

g.  For files, the hash value (SHA-1) of the file, which shall be used as a control number to identify the particular file throughout execution of this Protocol by any party;

h.  For email, the date sent, received, or stored;

i.  For email, the participating email addresses;

j.  For email, the hash value (SHA-1 or similar) of various combined email fields, which shall be used as a control number to identify the particular file throughout execution of this Protocol by any party;

6.      In addition to the Search Terms, Forensic Neutral shall conduct an investigation to determine whether electronic data has been wiped, destroyed, deleted, or otherwise removed from any of the Electronic Sources or Electronic Accounts.  Any analysis of a computer shall include an analysis of USB device activity and activity relating to the upload/sharing of data from cloud storage/sharing services.  Forensic Neutral shall prepare a USB summary report that identifies the serial number and name of each device as well as what dates/times such USB devices were plugged in.   Forensic Neutral shall utilize built-in forensic software functions to recover the file names, content, and metadata of any data discovered in a state of deletion, wiping, or destruction or overwriting, but shall not undertake manual data "carving" from unallocated space.

7.      Notwithstanding anything to the contrary, the Parties agree and acknowledge that the examination of the devices shall exclude the examination of any systems, databases, networks, programs, applications, files, data, documents and materials that are owned, hosted, operated or managed by Redwood Logistics, LLC and/or any of its predecessor or affiliated entities (collectively, "Redwood"), including but not limited to the Microsoft Office suite of software, products and applications (including Outlook) and Redwood's customer relationship management software, products and applications (including Vision and Zoho) (collectively, the "Redwood Applications").   To the extent that the examination yields any "hits" from the Redwood Applications, such "hits" shall not be disclosed to or shared with Hub.  For the sake of clarity, this restriction, precludes any search/examination of (among other things) Defendant's Redwood Logistics, LLC email account – srose@Redwwodlogistics.com.

8.      Concurrently with the delivery of a report on the Search Term hits as outlined in Paragraph 4, above, Forensic Neutral shall promptly provide Defendant's counsel with complete,

restored copies of all files yielded by hits to the agreed upon Search Terms. Forensic Neutral shall deliver both native files and forensic logical forensic container files (such as .L01 files) to Defendant's counsel.

9. Within twenty-one (21) calendar days after Defendant's counsel receipt of the material referenced in Paragraph 8 herein, Defendant shall identify all files Defendant contends are protected by the attorney-client privilege, work-product doctrine or other applicable privilege or otherwise protected from disclosure. Defendant shall identify his objections through a privilege log consistent with the Federal Rules of Civil Procedure, which shall be served upon Plaintiff's counsel. During this period, Defendant may also withhold documents that are irrelevant (such as, for example. those of a personal nature). Such relevancy withholdings need not be included on the privilege log. Thereafter, Defendant's counsel shall communicate to Forensic Neutral the hash values (SHA-1 or similar) corresponding to the information to be excluded from the information set to be produced to Plaintiff's counsel, as explained in Paragraph 10 herein.

10. Within one (1) business day after Defendant's counsel communicates to Forensic Neutral the hash value (SHA-1 or similar) corresponding to the information to be excluded from the information set produced to Plaintiff's counsel, Forensic Neutral shall produce to Plaintiff's counsel non-privileged (or otherwise protected) relevant information yielded by the agreed upon Search Terms and parameters in both native file and logical forensic container file (such as .L01), which shall exclude any and all information identified by Defendant as restricted from production as explained in Paragraph 9 herein. For the sake of clarity, Forensic Neutral shall not produce to Plaintiff's counsel any information listed on Defendant's privilege log or information that has been identified by Defendant as irrelevant.

11.     Plaintiff shall have five (5) business days from the date on which it has been provided with a complete production to review the files for files belonging to Plaintiff.  Plaintiff shall deliver to Forensic Neutral and Defendant, within one (1) day of completion of Plaintiff's review, a listing of files and identifiers it contends are Plaintiff's property.  Forensic Neutral shall take steps to permanently and irrevocably wipe these files from Defendant's original Electronic Source or Electronic Account.  To the extent that any of the identified information resides on the Lenovo Laptop or iPhone, this Lenovo Laptop and/or iPhone shall be made available to Forensic Neutral for a maximum of 24 hours to complete the wiping of the disputed data, after which these devices shall be returned by Forensic Neutral to Defendant's counsel by messenger delivery. Forensic Neutral shall verify destruction of these files and provide a Certificate of Destruction relating to the same.  Forensic Neutral shall preserve and maintain a native copy of all documents/data identified for destruction/wiping by Plaintiff until otherwise directed by agreement of the parties or order of the Court.  Any other information sourced from Defendants' Electronic Accounts and/or Electronic Devices in the possession of Forensic Neutral shall immediately be forensically destroyed/wiped by Forensic Neutral.

12.     Following the Forensic Neutral's work outlined above, the Forensic Neutral shall return the Electronic Sources to Defendant's counsel and forensically destroy all credentials provided by Defendant.

13.     Defendant and Plaintiff shall each be equally (50% / 50%) responsible for the Forensic Neutral's work set forth herein.  However, 100% of the cost/expense of any deletion/wiping of the Electronic Sources and/or Electronic Accounts, as detailed in Paragraph 11 herein, shall be borne by Plaintiff. Additionally, Defendant's total obligation under this Order shall be capped at $10,000, exclusive of any messenger fees incurred for expedited delivery of

the iPhone and/or Lenovo Laptop.  Forensic Neutral shall not be authorized to undertake any other work or service unless agreed to by the parties in writing.

14.     Forensic Neutral may not work as a consultant or expert in this lawsuit for either party.  Forensic Neutral may not have any unilateral communications either party.  All communications by the parties shall be transparent as to the Forensic Neutral.

15.     If necessary, the parties may jointly or individually petition the Court for modification of the time deadlines outlined in this Agreed Protocol.

**Dated:  June 21, 2018**                                    **SO ORDERED**:

*Jointly Prepared By*
*Counsel For Both Parties*

_____
Hon. Rebecca R. Pallmeyer

# EXHIBIT 3

| **From:** | Gary I. Blackman <gblackman@lplegal.com> |
|---|---|
| **Sent:** | Thursday, December 27, 2018 11:56 AM |
| **To:** | Piskorski, Thomas <TPiskorski@seyfarth.com> |
| **Cc:** | Keith Chval; Mendez, Katherine; Vera, Danielle A; E. Tim Doris; Timothy I. Massat |
| **Subject:** | RE: HUB/Rose [LPLEGAL-Emails.FID1245076] |
| **Attachments:** | 0029 - Agreed Order.PDF; 0064 - Consent Decree Order signed.PDF |

Hey Tom. There have been no deletions because Protek is waiting for confirmation of who will pay. They estimate the costs to be about 7k to wipe and delete Steve's devices.  Para 13 of the Agreed Protocol Order (Dkt. 29) says Hub pays all deletion and wiping fees and Rose is capped at 10k for the case ( "*However, 100% of the cost/expense of any deletion/wiping of the Electronic Sources and/or Electronic Accounts, as detailed in Paragraph 11 herein, shall be borne by Plaintiff.*"). We have already paid 10k. Para 2 of the Consent Decree confirms our cap at 10k: (" *Each Party bears its own attorney's fees and costs. However, Rose remains obligated to pay ten thousand dollars $10,000 to Protek International, Inc. ("Protek"), his share of Protek's costs under the Forensic Protocol. (Dkt. No. 29)*"  We have been ready willing and able to comply with the Consent Decree but Hub needs to confirm with Protek that it will be paying the bill. What am I missing ? Gary



**GARY I. BLACKMAN**

📞 312.476.7536
📱 312.371.8961
✉ gblackman@lplegal.com



2 N. LaSalle St. Suite 1300,
Chicago, Illinois 60602

**Website | LinkedIn | YouTube**

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.